[Civ. No. 6656.   Third Dist.   Apr. 22, 1942.]

A. W. GIVENS, Respondent, v. M. MARKALL, Appellant.

C. Ray Robinson and Dinkelspiel & Dinkelspiel for Appellant.

Louis T. Milburn and Preston, Braucht & George for Respondent.

THOMPSON, Acting P. J. — Judgment was rendered against the defendants for damages in the sum of $1,000 for wrongfully removing from plaintiff's mining property, called the Jesus Domingues Mining Tract, in Mariposa County, certain machinery and equipment, which were affixed to the property as provided by section 2601 of the Public Resources Code of California, formerly section 661 of the Civil Code, and used in the operation of the mine. The complaint asked for damages in the sum of $3,000 for the wrongful removal of the machinery. Punitive damages in the additional sum of $10,000 were also demanded. After the commencement of the action and possession of the property for four months, the defendants returned the machinery to the plaintiff's property but failed to reinstate it in the mine as it was located before the removal. The answer admitted the taking of the machinery but alleged that it was innocently purchased from a stranger to the action, whom they believed to be the owner, and that they had returned the machinery to plaintiff's mining claim.

Findings were adopted favorable to the plaintiff upon the chief issue. The demand for punitive damages was denied. Judgment was rendered against the defendants in the sum of $1,000 for the wrongful taking of the machinery and failure to restore it to the place in the mine from which it was removed. From that judgment this appeal was perfected.

The appellant contends that the findings and judgment are not supported by the evidence for the reason that there is no valid proof of detriment to the freehold. In other words, it is asserted the rule of evidence requires proof of the value of the real property before and after the removal or damage to the machinery which was deemed, by statute, to be affixed to the mining claim. It is asserted the court erred in permitting two witnesses to testify, over objections, to the amount of damages which they believed should be awarded on account of the removal of the machinery.

It is true that the trial judge or the jury has the exclusive province of determining the amount of damages to be awarded for injury to property, and that a witness may not be permitted to speculate on the amount of damages which is deemed to have been sustained. (*Miller & Lux, Inc.* v. *Pinelli,* 84 Cal. App. 42, 50 [257 Pac. 573].)

We are of the opinion the evidence adequately sustained

the findings and judgment in this case regardless of whether the rule, under the circumstances which existed in this case, required proof of damages to the real property by showing its value before and after the removal of the mining machinery, or whether the injury to the machinery and the detriment on account of its removal from the mining claim and failure to restore it to its proper place may be shown separately from the value of the real property, with and without the machinery.

Mr. A. W. Givens, the owner of the mining claim and property which are involved in this action, testified that he had bought and sold mining machinery for many years, and that he knew the value of the property. Regarding the value of the property, he was asked this question:

"Q. What would you say the value of the Domingues claim was before the machinery was taken, the machinery and equipment and buildings were still on the Domingues claim early in December, 1939?"

To which he replied:

"A. Why, I believe that as near as I can figure up, it would be worth around $3,000 to the property to have the machinery on there."

On motion that answer was stricken from the record on the ground that it was not responsive. He was then asked:

"What, in your opinion, was the value of the property after the removal of the machinery and equipment in December of 1939, what difference, if any, would you consider the removal had made in the market value of the Domingues claim?"

To which he replied:

"A. Well, I believe it will make a difference of about $3,000, as near as I can estimate."

Mr. James W. Warford was then called to establish the value of the property. He testified that, for many years, he had owned and operated mining enterprises; that he had bought and sold mining machinery and equipment, and that he was familiar with plaintiff's mining claims and equipment since 1929 or 1930, and knew their values. He said he had visited the mines in August, 1940, and knew the condition of the machinery and equipment. He was then asked the following question:

"Q. Now what, in your opinion, resulting from your exam-

ination of this property, would be the difference in the market value of the Jesus Domingues tract, immediately before the machinery was removed and immediately after it was removed?"

To this question he replied:

"A. The difference would be the value of that equipment plus its installation value amounting—— . . . That amount is $2,990.25."

He was then asked:

"Q. How much would it cost to put that machinery back in the same condition it was when you saw it in 1939?"

To which he answered:

"A. I estimate the cost to be $1,144 and a few cents."

Both witnesses were elaborately cross-examined by the appellant. He had every opportunity to ascertain the knowledge of the witnesses regarding the value of the mining claim with and without the machinery attached thereto, both before and after the wrongful removal of the equipment. ■ In a proper suit for permanent damages to a freehold, the reason for the rule which ordinarily requires the measure of damages to be shown by proof of the value of the property before and after the commission of the acts complained of, is that the jury may determine, by subtracting one valuation from the other, what the amount of actual damages may be. ■ In the present case that result is exactly what the testimony of Mr. Givens, the owner, amounts to. In effect he said that the difference in the market value of the mining claim before and after the removal of the machinery, in his opinion, was about $3,000. To the same effect, Mr. Warford testified that the difference between the value of the mining claim before and after the removal of the machinery was the market value of the machinery and equipment, plus the cost of replacing or installing it in its proper position in the mine, which difference in value he fixed at $2,990.25. He further testified that it would cost $1,144 to restore that machinery to the same condition it was before it was removed by the defendants from the mining property. The damages which were awarded amounted to only $1,000. That is less than the stated cost of restoring the machinery to its former condition and place. The foregoing evidence adequately supports the findings and judgment in that regard.

It should be recalled that the issues of this case were changed entirely by the allegations of the answer and by the

actual return of the machinery to the mining property, although it was not installed in its proper place. While the complaint did sue for damages to the freehold, the answer and the subsequent actual return of the machinery left the issue only as to what damages were sustained by the plaintiff on account of the removal of the machinery and the damage thereto, plus the detriment sustained for failure to reinstall the machinery in the mine. The suit was tried on the theory that the defendants were entitled to credit for having returned the machinery to plaintiff's claim, but that he was still entitled to damages for injury and detriment to the machinery and equipment, and for failure to reinstate it in the position in the mine from which it had been wrongfully removed. The court found that the plaintiff sustained damages on account of the wrongful acts of the defendants, in the sum of $1,000. Warford's testimony that it would cost $1,144 to "put that machinery back in the same condition" that it was before its removal is sufficient evidence to support the award of the court.

There is no fixed rule with respect to the measure of damages for the wrongful injury or destruction of property. Each case must be determined on its particular facts. It is said in 15 American Jurisprudence, page 514, section 106, in that regard:

"There is no fixed rule for determining the measure of damages for injuries to, or destruction of, property in every case. The amount to be awarded depends upon the character of the property and the nature and extent of the injury, and the mode and amount of proof must be adapted to the facts of each case. In ascertaining the damages to be allowed, the jury may consider all the circumstances connected with the injury."

In the last-cited authority, at page 515, section 107, it is further said:

"One whose real property is injured by another's wrongful and negligent act is entitled to such damages as will compensate him for the injury or loss sustained. No hard and fast rule can be laid down, however, for the measurement of those damages; whatever rule is best suited to determine the amount of the loss in the particular case should be adopted. Usually the measure of damages depends upon whether the injury is permanent or temporary in character, an injury

not being necessarily permanent because it is to real estate.''
In discussing the rule for establishing the measure of damages
for wrongful injury to property which is affixed to and a part
of real estate, it is said at page 521 of the authority last cited
that courts recognize two elements of damages under such
circumstances: (1) ''The value after separation from the
freehold, if any, of the thing taken, injured or destroyed, and
(2) the damage to the realty, if any, occasioned by the sever-
ance.'' It is further said, in that same paragraph, regarding
the measure of damages:

''If the thing destroyed or injured has a value which can
be accurately measured without reference to the value of the
soil on which it stands or out of which it grows, the measure
of damages is its value ... or the cost of restoring or replacing
it, where this can be done at a reasonable cost, or at a cost not
disproportionate to the real injury, or less than the diminution
in value of the whole property.''

Again, it is said at page 526 of the authority last cited,
regarding the measure of damages for injury to fixtures:

''The weight of authority seems to favor the rule that the
measure of damages for the wrongful removal or destruction
of fixtures is the value of the fixtures in their condition at the
time of their removal or destruction—that is, their replace-
ment value, or their value in place, and not their secondhand
value, or their value when taken down for removal, or the
difference in the value of the real property before and after
their removal. But there is authority to the effect that the
proper measure of damages is the cost of restoring the prop-
erty to its original condition or its diminished value. In fixing
the damages, the extent of the depreciation of the fixtures, if
any, as well as the original cost and cost of replacement,
should be taken into consideration, but if the property re-
moved is as good as new, depreciation will not be deemed
important nor will computation to a nicety be made for the
difference in value between the old and the new:''

To the same effect is the text which is found in Volume
IV, Sutherland on Damages, 3rd edition, page 2967, section
1015, where it is said:

''If the thing destroyed, although it is part of the realty,
has a value which can be accurately ascertained without refer-
ence to the soil on which it stands or out of which it grows,
the recovery may be of the value of the thing thus destroyed,

and not the difference in the value of the land before and after such destruction.''

In accordance with the principle of ascertaining the measure of damages by receiving proof of the value of the fixtures at the time of their wrongful removal, independently of the value of the real property to which they were previously affixed, at least two California cases have held that it constitutes a proper measure of damages to prove the market value of the fixture at the time of their removal, separate and apart from the value of the real property. (*Rhoda* v. *Alameda County,* 58 Cal. 357; *Greenebaum* v. *Taylor,* 102 Cal. 624 [36 Pac. 957].)

Section 3333 of the Civil Code provides that:

''For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided for by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.''

In the present case, since the mine was not in actual operation at the time of the wrongful removal of the machinery and equipment, and since the machinery was returned to the property of the plaintiff after the suit was commenced, but not reinstalled in its proper place, we are satisfied the correct measure of damages was the loss sustained by the plaintiff by breaking or injuring the machinery and equipment, together with the reasonable cost of reinstating it in the mine in the same condition and place it occupied at the time of its wrongful removal. Mr. Warford's testimony that it would cost $1,144 to replace it in the mine where it belonged, in the same condition that it was before the removal of the machinery and equipment, supports the judgment with respect to the amount of damages. This statement is not a mere declaration of the amount of damages. It is expert evidence of the cost of labor and materials necessary to restore and install the machinery in the mine in the same condition and place it occupied before its removal.

The judgment is affirmed.

Steel, J. pro tem., and Tuttle, J., concurred.