[File No. 7281]

ARTHUR WILLIAM GUSSNER, Robert Gussner, Paul Gussner and Ardith Taylor, Respondents, v. MANDAN CREAMERY & PRODUCE COMPANY, a Corporation, Appellant.

(51 NW2d 352)

Opinion filed January 22, 1952

*Sullivan, Kelsch & Scanlon,* for appellant.

*Cox, Cox, Pearce & Engebretson,* for respondents.

MORRIS, Ch. J.   This is a law action tried to the court without a jury which resulted in a judgment against the defendant for $4,846.10 damages and costs for the removal of certain refrigeration equipment and machinery from a slaughterhouse and storage plant owned by the plaintiffs.

In 1926 one George Gussner was the owner of a slaughterhouse, livestock sheds, feed sheds, stockyards, and other appurtenances located on the Southeast Quarter of the Northwest Quarter of Section 10, Township 138, Range 80 in Burleigh County.   In November of that year he leased to his son, Arthur W. Gussner, these and other premises for a period of three years. The main building was forty feet wide and eighty feet long, two

stories high, and built of concrete. It was designed especially for the killing of livestock and storage of meat. Arthur W. Gussner added considerable equipment to further the use for which the building was originally designed and developed it as a refrigeration plant. This equipment included coils, pipes, fittings, valves, brackets, fasteners, gauges, thermostats, and other incidental items necessary to cooling the rooms used for refrigeration and chilling the products of the plant. It also included the cooling units which were a 6 x 6 York ammonia compressor with a 20 horsepower electric motor and a 3 x 3 York self contained unit ice machine. The pipes and coils were fastened to the walls and ceilings with brackets, bolts, and screws, and in places the pipes penetrated the floors and the concrete walls between the rooms. The large compressor and motor were bolted down to concrete blocks or foundations. The compressor was also connected to the refrigerating pipes or coils as a part of the refrigerating unit. The 3 x 3 ice machine was not bolted down but sat on the concrete floor. It, too, was connected with the pipes and coils of the refrigerating system and with the electrical system of the building. The large compressor was in regular use as a part of the system and the smaller self contained unit was a standby or emergency machine used on temporary occasions.

After the expiration of the written lease Arthur W. Gussner continued to occupy the premises and operate his meat packing and slaughtering business thereon. On January 13, 1939, he filed a voluntary petition in bankruptcy and was adjudicated a bankrupt on January 16, 1939, whereupon his estate was taken over and administered by a trustee in bankruptcy. The petition in bankruptcy listed as assets of the bankrupt the property involved in this action, along with many other assets. An appraiser was appointed who filed with the referee in bankruptcy his return and appraisement of the property on February 21, 1939. Part of the property in litigation was designated as "KILLING PLANT EQUIPMENT" and is listed as being "Affixed to Realty." It is itemized as follows:

"3 x 3 York Ice Machine—Automatic Self-Cont.
6 x 6 York Ice Machine—Automatic Starter & 20 HP Motor
Vertical Rend. Tank & Boiler
Hot Water Tank
Drinking Fountain
1 Toilet & Shower Fixture
Condenser & Coils
Galv. Drain Off Sheets & Frames
A. R. Sink"

This property was not appraised and, although listed in the appraisement, no value was fixed as the appraised value of the various items. The bankrupt estate was reappraised in January 1940 and again no value was fixed for these items. It does not appear that the property was ever valued or appraised by the bankruptcy court. The bankruptcy act requires the appraisement of all property of the estate, although a sale without appraisement is not necessarily void. Remington on Bankruptcy, 4th Edition, Volume 6, Section 2523. This requirement of the bankruptcy act, however, is of significance in determining the attitude of the trustee and referee toward the property, where, as in this case, property is listed as affixed to realty not owned by the bankrupt and is not appraised and the report of the appraiser is approved by the referee.

The trustee does not appear to have attempted to exercise any dominion over the property throughout the course of the bankruptcy proceedings, except the sale which we will later discuss in more detail. The trustee did not continue to operate the packing business of the bankrupt, nor did he take over or occupy the premises upon which the litigated property was located. The trustee permitted the property to remain on the premises without severance. On October 15, 1941, some two years and eight months after the adjudication, the trustee, having obtained an order from the referee in bankruptcy authorizing the sale of the remaining assets of the estate, sold to A. A. Bentz for $75.00 "all of the personal property, goods and effects, including the accounts receivable in the said Bankrupt Estate

. . . ." The bill of sale did not itemize or otherwise describe the personal property sold.

Mr. Bentz testified that when he bought the property the trustees showed him the bankruptcy schedules which contained a list of the property of the estate and pointed out the items that remained unsold and that the trustee particularly mentioned the ice machines. Mr. Bentz, unaccompanied by the referee, went out to the packing plant where an employee of the defendant, then in possession as tenant of George Gussner, pointed out the ice machines and various other items that were on the list.

On October 24, 1941, A. A. Bentz, for a consideration of $250.00, executed a bill of sale to Cloverdale Products Company covering the following personal property:

"1—3 x 3 York Ice Machine, automatic self. cont.
1—6 x 6 York Ice Machine
1—15 HP Motor complete with starter and switch
1—Large steel offal table
1—Galvanized sink and drain board
1—Hot water tank
1—2 blade gang plow
1—Bradley 2 row cultivator
1—McCormick Deering corn binder
and all other small articles located at the old Gussner Packing Plant . . . ."

The defendant leased the packing plant from George Gussner and took possession of the premises, including the property in litigation which was a part of the packing plant equipment then in place. The term and terms of this lease do not appear. On December 1, 1941, George Gussner and the defendant entered into a written lease for one year covering the premises, including the packing plant, slaughterhouse, and appurtenant buildings. In that lease it was agreed, among other things, "that the Lessee shall be responsible for mechanical adjustments and operators services necessary for maintenance of the refrigeration equipment. The Lessee further agrees to pay all maintenance cost conducive to good mechanical operation of all equipment situated upon said premises." After this lease expired, the defendant

continued to occupy the property as tenant from month to month until the week of July 20, 1947. When it vacated the premises, the defendant detached and took the property which is the subject of this controversy.

The position of the plaintiffs is that the refrigerating plant and its attached accessories became a part of the real estate when installed by Arthur W. Gussner and never became a part of the estate of the bankrupt and no title to it passed to A. A. Bentz by the bill of sale which transferred to him in general terms the remaining assets of the estate. The defendant contends that the refrigerating plant and its attached accessories were trade fixtures, the title to which did pass to the bankrupt's estate and through the trustee and A. A. Bentz to the Cloverdale Products Company, which is a subsidiary of the defendant, and that the defendant had a lawful right to remove the trade fixtures when it vacated the premises as tenant. The present plaintiffs are the heirs of George Gussner, who died in 1942.

That which is affixed to land is real property. Section 47–0103 NDRC 1943.

"A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." Section 47–0105 NDRC 1943.

Under the provisions of Section 47–0604 NDRC 1943 property affixed to the land of another without an agreement permitting its removal belongs to the owner of the land unless he chooses to require its removal. Arthur W. Gussner affixed the cooling and refrigerating plant to the premises of George Gussner by means of cement, nails, bolts, and screws without an agreement, as far as this record shows, permitting him to remove it. Under the statutory law thus far considered it would appear to have become a fixture and so affixed to the land as to belong to the owner of the land. The defendant argues that the property in question constituted trade fixtures and that the rule applicable to ordinary fixtures does not apply. It is pointed out that Section

47–0604 NDRC 1943 further provides: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto, for the purpose of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has become an integral part of the premises by the manner in which it is affixed."

The defendant contends that this provision prevented the refrigeration plant from becoming a part of the real estate; that it continued to be personal property and could be sold as such by the trustee of the bankrupt, and when so sold the purchaser had the right to remove it, as did the defendant in this case.

In Klocke v. Troske, 57 ND 404, 222 NW 262, this court held that a light plant installed in the basement of a dwelling for the purpose of lighting buildings in the curtilage and firmly attached to the floor of the basement, and a hay carrier system attached to the barn, were fixtures and became part of the real estate and that the character of the fixtures attached to all of the wiring, batteries, ropes, and other equipment attached to and necessary to operate the light plant and the hay carrier. It is clear that under the reasoning in this case the refrigerating plant and its accessories were of the same character as the light plant and the hay carrier system, unless, as the defendant contends, the refrigerating system and its component parts were trade fixtures. But if we assume that the defendant's contention in this respect is correct, it affords no defense in this action and the plaintiffs must still prevail. It will be noted that under Section 47–0604 a tenant may remove anything he has affixed to the premises "for the purpose of trade," under certain conditions. One of these conditions is that removal be effected "any time during the continuance of his term."

In this case there was no agreement regarding the removal of the fixtures by the tenant, Arthur W. Gussner. Under Section 47–0105 the refrigerating plant was affixed to the land and under Section 47–0103 it became real property. There is nothing in this record to indicate that Arthur W. Gussner, when he installed the plant, intended otherwise. The right of removal, if any exists, depends entirely upon the statutory right to remove

trade fixtures under the provisions of Section 47–0604 NDRC 1943. A strict construction of that statute would indicate that the termination of the tenancy terminated the right of removal. 22 Am Jur, Fixtures, Sec 43; 36 CJS, Fixtures, Sec 41; 12 Cal Jur, Fixtures, Sec 16. There is a tendency among the courts to avoid wherever possible the strict application of the statutory rule terminating the right of the tenant to remove trade fixtures coincident with the termination of the tenancy and to allow the tenant a reasonable time within which to remove his fixtures. In Tiffany on Real Property, 3rd Edition, Volume 2, Section 622, page 613, we find this statement:

"If the tenancy is of uncertain duration, such as a tenancy at will, or if it is subject to termination on a contingency, the tenant has a 'reasonable time' after its termination within which to remove the fixtures, provided at least the termination is not the result of his own voluntary act, and provided further, it seems, he has not relinquished possession."

In accord with this liberal tendency this court in Hamilton v. Charlebois, 63 ND 504, 248 NW 676, held that Section 47–0604 NDRC 1943 did not "prevent removal of trade fixtures according to appropriate equitable or legal principles, where the full term is cut short on account of the inability of the tenant to pay rent."

In Grote v. Brown, 170 F2d 747, 6 ALR2d 318, it is held that if the lease is terminated by the landlord before expiration or under circumstances beyond the control of the lessee, the lessee has a reasonable time in which to remove fixtures after the termination of the lease and that the reasonable time is determined in each case by the peculiar facts and circumstances and is largely within the discretion of the trial court. This case is followed (6 ALR2d 322) by an annotation dealing with the time within which a tenant's right to remove trade fixtures must be exercised.

Arthur W. Gussner entered into possession of the premises on November 9, 1926, as a tenant under a three year lease. He remained in possession until he was adjudicated a bankrupt on January 16, 1939. After the expiration of the lease his tenancy apparently continued without a definite arrangement as to the

term. The refrigerating system was not all installed at one time but items appear to have been added by Arthur W. Gussner at various times during his tenancy. Most of them were installed prior to 1934. All of the items involved in this action were a part of the refrigerating plant maintained and used in the business that Arthur W. Gussner operated upon the premises during his tenancy which continued up to the time he was adjudicated a bankrupt. It does not appear that the trustee took possession of the premises or made any effort to continue the business. The trustee became entitled to such right as the bankrupt had to any trade fixtures and succeeded to the bankrupt's right to remove them. Remington on Bankruptcy, 4th Edition, Section 1258. But the trustee, like the bankrupt tenant, was subject to the limitations of our statutes with respect to his right to remove any trade fixtures that had been installed during the tenancy. His right derived from the bankrupt and he succeeded by operation of law to the property of the bankrupt, including his right to remove the fixtures, subject to statutory limitations with respect to their removal. Our statutory provisions regarding fixtures and their severance are the same as those of California. In Trabue Pittman Corp. v. County of Los Angeles, 29 Cal2d 385, 175 P2d 512, it is held that fixtures attached by a lessee to leased property become a part of the realty and remain so until they are severed and that trade fixtures not removed during the term of the tenancy or within a reasonable time thereafter remain part of the realty.

The trustee permitted the fixtures to remain on the premises without severance therefrom for two years and eight months after adjudication. They were listed on the appraisal and reappraisal sheets, but were not appraised, and a notation was made on the sheets with respect to these items "Affixed to Realty." Nothing was done to bring the items into the possession or dominion of the trustee. When the remaining assets of the estate were sold on October 15, 1941, to A. A. Bentz no property was itemized in the bill of sale and no reference whatever was made to the location of any property that constituted the remaining assets of the estate.

General authority was given to the trustee by an order of the

referee in bankruptcy, dated March 10, 1939, permitting the trustee to sell at private sale all of the property of the estate "as specified in the inventory and appraisement, at private sale, and at a price not less than 75% of the appraised value of said property, . . . ." The order allowing the trustee's final account and report directs the trustee to execute a bill of sale to A. A. Bentz for all of the personal property remaining in the estate upon, the payment of $75.00, but here again the property is not described. There is nothing in the record to show that the trustee ever advised George Gussner or his heirs that he claimed the property as a part of the bankrupt estate. No claim was ever asserted to the property until after the trustee had sold the remaining assets of the estate to Bentz and he in turn, by a bill of sale specifically describing the property, attempted to transfer it to the Cloverdale Products Company. When the plaintiffs learned that the Cloverdale Products Company, or the defendant, claimed the property is a matter of dispute. It was sometime after the Cloverdale Products Company received its bill of sale from Bentz. If, as we have assumed, the various items constituting the refrigerating plant that were removed by the defendant could be considered trade fixtures and could have been legally removed by the tenant or his trustee in bankruptcy within a reasonable time after the termination of the tenancy, no rights were asserted by the trustee or action taken by the referee that would justify the trustee in treating the fixtures as severed and attempting to transfer them as a part of the remaining assets of the bankrupt estate or conveying any rights therein to the purchaser of those assets on October 15, 1941. The tenancy of the bankrupt and his successor, the trustee, had long since terminated. The defendant had gone into possession as a new tenant of George Gussner in the fall of 1939, some two years prior to the sale of the remaining assets of the estate to Bentz. The reasonable time within which the fixtures might have been removed had expired and no right to or property therein passed to Bentz by the bill of sale and he in turn had none to convey to the Cloverdale Products Company. The fixtures, therefore, at the time they were removed by the defendant were a part of the real estate to which they were affixed and were

the property of the plaintiffs. See Matter of Brent's Furniture Company, 10 Am Br NS 234.

The defendant urges that a sale pursuant to the direction of a bankruptcy court cannot be collaterally attacked. It is the rule that an order of a bankruptcy court confirming a sale of property by the trustee is not subject to collateral attack with respect to any matter which that court had power to determine. 6 Am Jur (Rev Ed), Bankruptcy, Section 1206; Remington on Bankruptcy, 4th Edition, Vol. 6, Section 2584; Robertson v. Howard, 229 US 254, 57 L Ed 1174, 33 S Ct 854. The question here is not the validity of an order of the bankruptcy court. The question is: What, if any, right or title to the fixtures passed to Bentz as a part of the "remaining assets and property of the Bankrupt" so described in the orders of the referee? This question is not one of collateral attack upon any action of the bankruptcy court. The various items of the refrigerating system became a part of the realty. The right, if any, that the trustee had to sever this property expired by operation of law long before the sale of the remaining assets of the estate. The bankruptcy court or the referee never at any time determined that the refrigerating plant was a part of the estate of the bankrupt. We will not presume that the referee either intended to authorize or to approve the sale of property by the trustee which he clearly had no right to sell. There is no collateral attack upon any action of the referee or the bankruptcy court.

The final question to be determined here is that of damages. The defendant left some debris on the premises for which the court awarded the plaintiffs $100.00 as the reasonable cost of removal. The defendant does not challenge that item. The court also found that the plaintiffs were damaged to the extent of $4,700.00 by the removal of the ice machines and other parts of the refrigerating plant. This sum included injury to the building as well as loss of the fixtures. The defendant vigorously challenges the amount of the judgment upon the grounds that no proper measure of damages was established and that there is no competent evidence in the record to justify an award of more than $1,095.00.

There is seeming disaccord of authority as to the measure

of damages to be applied to the wrongful removal or destruction of fixtures. See annotation 69 ALR 914.

The right to recover damages for tort in this state rests upon statute. Section 32–0320 NDRC 1943 provides:

"For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by law, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Section 3333 of the Civil Code of California contains the same provisions. Givens v. Markall, 51 Cal App2d 374, 124 P2d 839.

In Rhoda v. Alameda County, 58 Cal 357, which involved the removal of a vault which was a fixture and part of the realty, the court held: "the measure of damages is the value of the article as it was in place as a part of the realty, immediately preceding its removal; not what it would sell for in open market removed from the building."

The rule thus stated meets with general approval. Sedgwick on Damages, 9th Edition, Vol 3, Section 944; 15 Am Jur, Damages, Section 116. However, to say that the measure of damages is the value of the fixtures in place as a part of the realty before removal is not sufficiently comprehensive as a guide for the determination of damages in all instances. The question still remains as to how that value will be proved. The seeming divergence of authority at this point results from the existence of two methods by which the value may be ascertained. Under one method the proof of damages depends upon showing the value of the real property before and after the removal of the fixtures, the difference being presumptively the value of the fixtures removed. The other method is to show the cost of restoring the fixtures to their proper place without reference to the value of the real estate. We do not believe it is incumbent upon or even proper for this court to decide that where fixtures have been wrongfully removed or destroyed, either one method or the other shall always be used in determining the amount of detriment suffered. The true rule should be that the method best suited for measuring the loss in the particular circumstances of the case should be the one to be used. 36 CJS, Fixtures, Section 67;

Slane v. Curtis, 41 Wyo 402, 286 P .372, 69 ALR 906; Joiner v. Pound, 149 Neb 321, 31 NW2d 100.

This case was tried to the court and the trial judge permitted the plaintiffs to introduce evidence under both theories of proof. A witness for the plaintiffs testified that the replacement cost would be $9,732.00, but this testimony, while bearing upon the cost of restoration, does not necessarily establish it. Under the basic facts of this case it would seem that the cost of restoration is an extremely difficult matter to determine. Various component items of the refrigerating system were acquired at different times over a period of several years. Some were purchased new and some second hand. The evidence is meager with regard to the state of repair of the system at the time it was dismantled and removed. Where the value of fixtures destroyed or unlawfully removed can be ascertained with reasonable accuracy without reference to the real estate to which they are attached, the cost of replacement seems to be the favored method of determining the damages for which the defendant must respond. Slane v. Curtis, supra; Joiner v. Pound, supra; Givens v. Markall, 51 Cal App2d 374, 124 P2d 839; 15 Am Jur, Damages, Section 116; Sutherland on Damages, 3rd Edition, Vol 4, Section 1015, page 2965. While difficulty of proof alone will not render a proper rule for measuring damages inapplicable; where, as in this case, the facts and circumstances are such as to render the rule unsuited for measuring the damages with reasonable accuracy, an alternate rule, if available, may be applied. Under the circumstances here presented, where the issue was the detriment occasioned by the removal of the cooling system which was attached to and had become a part of a building designed and constructed for use as a refrigerating plant, and damages were claimed for injury to the building as well as the value of the fixtures, it was competent to show the value of the building before and after the removal.

Harke v. Ewald, 51 ND 828, 200 NW 1009, was an action to recover damage done to real estate, wherein it was held that the proper measure of damages under Section 7165 Compiled Laws of 1913 (now Section 32–0320 NDRC 1943) "is the detri-

ment proximately caused by the injury to the realty and in the absence of evidence as to the cost of reparation the damages may properly be measured by the difference in the value of the real estate before and after injury." In this case it was proper for the trial court to allow testimony regarding the value of the premises before and after the removal of the cooling system.

The plaintiff, Paul Gussner, a part owner of the premises, placed the value of the building in which the fixtures were located at $34,800.00 before removal and $20,000.00 after removal, and testified that there was a drop in value immediately after removal of the fixtures by the defendant of $14,800.00. A real estate dealer in both commercial and residential property in Bismarck and vicinity estimated the value of the building before removal of the fixtures at $21,000.00 and after removal at $12,000.00. The defendant produced a refrigeration expert who testified that the 3 x 3 ice machine was worth $75.00 and that the reasonable value of the 6 x 6 ice machine in place in the packing plant was $350.00 or $400.00. He inspected some of the coils after removal and declared them to be worthless. This was his opinion as to most of the coils, but as to 1,400 feet, including hangers and fittings, he fixed the value at thirty cents per foot. The defendant contends that, if it is liable for the fixtures that were removed, in no event should judgment exceed $1,095.00, including the cost of cleaning up the premises.

The detriment for which the plaintiffs seek to recover includes injury inflicted upon the building by the manner in which the removal of the fixtures was carried out. In support of this feature of their suit, the plaintiffs introduced in evidence a number of photographs showing the condition in which the defendant left the building when it vacated the premises. In addition to these pictures the trial court had the benefit of a view of the buildings to which the parties agreed. The trial court found that the plaintiffs were entitled to recover $100.00 for cleaning up the premises and $4,700.00 for damages arising as a result of the removal of the refrigerating equipment. As we have frequently said in cases of this kind, the finding of the trial court is entitled to appreciable weight. Our review of the evidence in the light

610

of the applicable rules of law leads us to the determination that the judgment of the trial court is just and requires the defendant to pay only that to which the plaintiffs are lawfully entitled. Judgment appealed from is affirmed.

GRIMSON, CHRISTIANSON, SATHRE and BURKE, JJ., concur.