Ted ROLL and Frances Roll, Plaintiffs, Appellees and Cross-Appellants,

v.

Ralph J. KELLER, Defendant, Appellant and Cross-Appellee.

Civ. No. 10636.

Supreme Court of North Dakota.

Oct. 23, 1984.

Daniel J. Chapman [argued], of Chapman & Chapman, Bismarck, for defendant, appellant and cross-appellee.

Murray G. Sagsveen [argued], of Zuger & Bucklin, Bismarck, for plaintiffs, appellees, and cross-appellants.

GIERKE, Justice.

This is an appeal by defendant-appellant Ralph J. Keller from a judgment of the District Court of Burleigh County dated December 15, 1983, wherein plaintiffs-appellees Ted Roll and Frances Roll [Roll] were awarded $12,620 in compensatory damages and $5,000 in punitive damages. Roll cross-appeals, contending that $25,000 rather than $12,620 should have been awarded. We affirm.

Keller and Roll formed a partnership for the purpose of developing a mobile home court in Beulah, North Dakota. The property was subdivided into two parts, Valley Court Addition and Valley Park Addition. A sewer system was installed in Valley Court Addition with a stub extending into Valley Park Addition for future development.

A partnership disagreement led to litigation and subsequent dissolution of the partnership. By stipulation, the lots in Valley Park Addition went to Roll and the lots in Valley Court Addition went to Keller. Thereafter, Keller severed the sewer line which led to Roll's Valley Park Addition. Subsequent to the severance of the sewer line, Roll sold Valley Park Addition to Mer-ylin Hintz of Coal Valley Real Estate for $110,000. This court affirmed the grant of partial summary judgment by the District Court of Burleigh County, holding Keller liable for severance of the sewer line. *Roll v. Keller*, 336 N.W.2d 648 (N.D.1983).

At trial on the issue of damages Roll requested $25,000 in compensatory damages, representing the amount by which his property diminished in value as a result of severance of the sewer line.

The district court, in its memorandum opinion dated December 1, 1983, found that the evidence at trial was insufficient to support an award of $25,000 based on a diminution in value theory. Even if the evidence would have supported an award of $25,000, we agree with the district court's conclusion that the proper measure of damages in this case is the cost to repair the severed sewer line. On this basis, the district court awarded $12,620 in compensatory damages. The district court also found that Keller acted maliciously in cutting the sewer line to Roll's Valley Park Addition, and awarded $5,000 in punitive damages.

Keller appeals from the judgment dated December 15, 1983, awarding damages to Roll. Roll, in turn, cross-appeals, asserting that the trial court used an improper measure in assessing compensatory damages.

Three issues are presented:

(1) Whether or not the trial court's finding that the evidence supports an award of $12,620 in compensatory damages is clearly erroneous.

(2) Whether or not the trial court applied the appropriate measure in assessing compensatory damages.

(3) Whether or not the trial court's finding that Keller acted with malice is clearly erroneous.

I

In reviewing cases tried without a jury, this court will not set aside a finding of the trial court unless it is clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure; *Park View Manor, Inc. v.*

*Housing Authority of Stutsman County,* 300 N.W.2d 218, 228 (N.D.1980).

Keller contends that the district court's award of $12,620 in compensatory damages to Roll is clearly erroneous. He presents several bases in support of this contention:

1. That Roll should have mitigated damages by demanding that Keller reconnect Valley Park Addition to the Valley Court Addition sewer line;

2. That because Roll himself did not pay for the installation of the sewer, Roll suffered no damage; and

3. That the district court improperly used the contents of Plaintiffs' Exhibit No. 18 as a basis for damages.

We find no support for Keller's first two assertions. It was impractical in this case for Roll to demand that Keller reconnect the sewer line. The record illustrates that animosity existed between the two parties. Furthermore, the fact that Hintz, rather than Roll, paid for rerouting the sewer line does not mean that Roll sustained no damage. It is only reasonable to assume that Roll suffered to some degree from the severance of the sewer line. Roll argues that he was forced to reduce the selling price of Valley Park Addition from $135,000 to $110,000 as a result of the severance of the sewer line. At trial the evidence consisted of Roll's testimony that he and Merylin Hintz had initially agreed on a sales price of $135,000, and later lowered it to $110,000 when the parties discovered Valley Park Addition was without a sewer system.

As indicated, we agree with the trial court's conclusion that the evidence adequately justifies an award of $12,620. The district court arrived at the $12,620 figure by taking $7,428, the additional construction costs which were incurred as a result of severance of the sewer line, and adding to that figure engineering fees of $2,200 and observation and staking costs of $3,000.

We begin by addressing whether or not the trial court correctly determined that the additional construction costs in-

curred as a result of severance of the sewer line amounted to $7,428. This figure is supported by testimony from two witnesses. The defendant introduced Harley Swenson, a civil engineering consultant who inspected the rerouting plans and the sewer site. Swenson testified that $7,428 represents the difference between what it actually cost to hook the sewer line to the city system ($21,674.50) and what it would have cost to connect the sewer line to the stub in the Valley Court Addition as originally planned ($14,246). Swenson's estimate of $14,246 is substantiated by testimony from Richard West, a civil engineer employed by Interstate Engineering, Inc. West stated that a cost estimate computed by his firm indicated that the construction costs for connecting the sewer line to the stub in the Valley Court Addition would have amounted to approximately $14,000. This figure is virtually identical to Swenson's estimate. Both Swenson and Interstate Engineering arrived at the $14,000 figure by relying on a final estimate of actual costs prepared by Interstate Engineering and introduced as Defendant's Exhibit No. 30. Therefore, we agree with the trial court's finding that $7,428 accurately represents the difference between what it actually cost to hook the sewer line to the city system and what it would have cost to connect the sewer line to the Valley Court Addition stub.

We now address the propriety of the district court's award of $2,200 engineering fees and $3,000 observation and staking costs.

Keller contends that the district court committed reversible error by using the contents of a letter, Plaintiffs' Exhibit No. 18, as substantive evidence of damages. Plaintiffs' Exhibit No. 18 is a letter addressed to Roll's counsel, Murray G. Sagsveen, from Interstate Engineering, setting forth the estimated cost of rerouting the sewer line. Introduction of the exhibit was objected to at trial by opposing counsel on the ground that it was hearsay. Admission of a statement for a purpose other than proving its contents, however, is not objec-

tionable as hearsay. *Chester v. Einarson,* 76 N.D. 205, 34 N.W.2d 418, 437 (1948). Therefore, the letter was subsequently admitted solely to show that Roll received a carbon copy of the information on that date. Despite this reservation, the contents of Plaintiffs' Exhibit No. 18 were referred to throughout the trial.

■ Because the letter was admitted for one purpose only, Keller contends that it was reversible error for the court to rely on it as substantive evidence of engineering fees. A trial court should, however, admit all evidence which is not clearly inadmissible. *Fuhrman v. Fuhrman,* 254 N.W.2d 97, 99 (N.D.1977). It is rarely reversible error for a trial court to admit evidence which is allegedly inadmissible. *Fuhrman, supra* 254 N.W.2d at 99. We cannot say that reversible error was committed by the trial court in considering the two figures contained in Plaintiff's Exhibit No. 18 because the record contains sufficient independent evidence to support an award based on these figures.

■ We conclude that, without the information contained in Plaintiff's Exhibit No. 18, the testimony of both West and Swenson provide sufficient bases for upholding the trial court's award of $2,200 engineering fees and $3,000 observation and staking costs. Swenson testified that he would have assessed engineering fees of 10 percent of the $7,428 additional construction costs, or approximately $742. He also testified that engineering fees of $2,200 and observation and staking costs of $3,000 were "high". On the other hand, West, who was familiar with the project and the cost estimate prepared by his firm, testified that the $3,000 estimate for observation and staking costs on a project the size of Roll's was reasonable. West also stated that the engineering fees for redesign of the sewer system amounted to an actual cost of $2,203.54. We conclude that the record contains sufficient evidence from which the trial court assessed engineering fees of $2,200, and observation and staking costs of $3,000. Therefore, this award is not clearly erroneous.

II

The district court concluded as a matter of law that the appropriate measure of damages in this case is the cost to repair the severed sewer line. Cross-appellant Roll contends that the proper measure of damages is the amount by which his property diminished in value as a result of severance of the sewer line.

■ Section 32–03–09.1, of the North Dakota Century Code, provides:

*"Measure of damages for injury to property not arising from contract.* —The measure of damages for injury to property caused by the breach of an obligation not arising from contract, except when otherwise expressly provided by law, *is presumed to be the reasonable cost of repairs necessary to restore the property to the condition it was in immediately before the injury was inflicted* and the reasonable value of the loss of use pending restoration of the property, unless restoration of the property within a reasonable period of time is impossible or impracticable, in which case the measure of damages is presumed to be the difference between the market value of the property immediately before and immediately after the injury and the reasonable value of the loss of use pending replacement of the property. Restoration of the property shall be deemed impracticable when the reasonable cost of necessary repairs and the reasonable value of the loss of use pending restoration is greater than the amount by which the market value of the property has been diminished because of the injury and the reasonable value of the loss of use pending replacement." [Emphasis added.]

The thrust of § 32–03–09.1, N.D.C.C., is that either the cost to repair or the diminution in value, whichever is lower, is the measure which should be applied. The diminution in value method is applicable only when restoration is impossible or impracticable. In the instant case, restoration was not impossible since the sewer line

was restored within a reasonable time. Restoration, in order to qualify as impracticable, must cost more than the amount by which the property value has been reduced. Here, testimony as to the restoration costs proved to be considerably lower than the diminution in value. Therefore, because restoration of the sewer line was neither impossible nor impracticable, we agree with the trial court's conclusion that the cost to repair method is the appropriate measure of assessing damages.

### III

Whether or not the award of punitive damages is clearly erroneous requires an examination of the testimony at trial. At trial Keller testified that he purposely cut and plugged the sewer line after Valley Park Addition and Valley Court Addition were divided pursuant to the terms of the stipulation. Keller severed the sewer line and plugged the stub to Valley Park Addition on November 12, 1981, just a few days after he and Roll stipulated to the dissolution of their partnership. Keller asserted that he believed he was responsible for any damages caused by the overflow of the line onto Valley Park Addition and that that was the reason for the severance. It is interesting to note that Keller was not concerned about this during the lawsuit between Roll and himself, during the settlement of the suit, or shortly thereafter. Keller also asserted at trial that an attorney, James D. Schlosser, had advised him to cut the line. However, the trial court found that Attorney Schlosser had not advised Keller to cut the sewer line. The

trial court is in a position to judge the truth and credibility of the witnesses. Rule 52(a), N.D.R.Civ.P. The trial court, in its memorandum opinion, stated:

"There would have been no purpose in Mr. Schlosser's giving such advice or instruction, and he did not do so."

We agree with the trial court's characterization of Keller's conduct as a "reckless disregard for Mr. Roll's rights". In addition, Keller maintains that because he did not know the law of easements he should not be held accountable for severance of the sewer line leading to Roll's property. Finally, Keller testified that the stipulation signed by him and Roll absolved him from liability for severance of the sewer line. We conclude that, based on the above testimony, the trial court correctly determined that Keller acted with malice in severing the sewer line to Roll's Valley Park Addition. Therefore, the award of punitive damages in the amount of $5,000 is not improper.

For the reasons set forth in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.