Garland L. SWAIN and Kathleen M. Swain, Plaintiffs and Appellees,

v.

HARVEST STATES COOPERATIVES, formerly doing business as Great Plains Supply Company; also known as Great Plains, a Harvest States Company, and Great Plains Supply Company, a Division of Farmers Union Grain Terminal Association, Defendant and Appellant.

Civ. No. 900270.

Supreme Court of North Dakota.

May 7, 1991.

Traynor, Rutten & Traynor, Devils Lake, for plaintiffs and appellees; argued by J. Thomas Traynor, Jr.

Pringle & Herigstad, P.C., Minot, for defendant and appellant; argued by James E. Nostdahl.

GIERKE, Justice.

Harvest States Cooperatives, formerly doing business as Great Plains Supply Co. [Great Plains], appeals from a district court judgment awarding Garland and Kathleen Swain $77,986.99. We affirm in part, reverse in part, and remand for entry of amended judgment.

In 1978 Great Plains and Gregory and Kathleen Sinclair entered into a building contract in which Great Plains agreed to build the Sinclairs a modular house near Devils Lake for $39,300. Great Plains' representatives were aware that the land had a high ground water table and suggested a wood basement foundation. Although the blueprints for the house required drain tile in the basement, a Great Plains representative indicated that drain tile was not necessary because of the wood basement foundation. After the house was completed in the spring of 1979, the Sinclairs lived there until July 1982 when Gregory was transferred by his employer. The Sinclairs subsequently sold the house to the Swains for $65,000 in the spring of 1984.

In the fall of 1984, the Swains noticed that a wall in the basement was warped. Great Plains told them that it was a warped stud. In the spring of 1985, the Swains observed cracks in the basement floor. Great Plains informed them that the cracks were nothing major. In 1986, the Swains noticed larger cracks in the basement floor. Great Plains sent a representative to look at the home, and Twin City Testing was hired to take core samples from the basement floor. Those tests revealed that the foundation did not meet several minimum guidelines for wood basement foundations. On November 4, 1986, Great Plains wrote the Swains a letter in which it disclaimed any responsibility for the problems with their house.

The Swains sued Great Plains, alleging breach of contract, negligence, and breach of warranty. At a bench trial, the Swains presented evidence that the basement floor was heaving because of hydrostatic pressure and failure of the drainage system which in turn caused structural damage to the remainder of the house. According to the Swains, the doors did not work properly, the walls and paneling were warped, the kitchen ceiling was cracking, the rafters in the attic were splitting, and the house was "falling apart."

The trial court found Great Plains liable under breach of contract, negligence, and breach of warranty. The court awarded the Swains $46,816, plus 6% prejudgment interest ($10,042.99) from November 4, 1986, for the cost to repair the house; $9,128 for housing, food, moving and storing expenses incurred while the repairs were completed; and $12,000 for Garland's lost salary.

On appeal, Great Plains does not contest the trial court's determinations on liability, but contends that the trial court used the wrong measure in awarding damages to the Swains. Relying on *Dobler v. Malloy*, 214 N.W.2d 510 (N.D.1973), and *Roll v. Keller*, 356 N.W.2d 154 (N.D.1984), Great Plains argues that because of the overall cost of the repairs, reconstruction of a substantial portion of the house was necessary and therefore diminution in val-

ue was the proper measure of damages. Great Plains argues that the damages for diminution in value were between $25,500 and $37,500.

In *Dobler, supra,* 214 N.W.2d at 518, we outlined the measure of damages under Section 32–03–09, N.D.C.C.,[1] for breach of a construction contract:

"There are, of course, two possible measures of damages. If the contract is substantially performed, and the breach of contract can be remedied without taking down and reconstructing a substantial portion of the building, the amount of damages is the cost of making the work conform to the contract. Or, where the defects cannot be remedied without reconstruction of a substantial portion of the work, the measure of damage is the difference in value between what it would have been if built according to contract and what was actually built."

In *Roll, supra,* 356 N.W.2d at 157–158, we outlined the measure of damages under Section 32–03–09.1, N.D.C.C.,[2] for property injury not arising under contract:

"The thrust of § 32–03–09.1, N.D.C.C., is that either the cost to repair or the diminution in value, whichever is lower, is the measure which should be applied. The diminution in value method is applicable only when restoration is impossible or impracticable. In the instant case, restoration was not impossible since the sewer line was restored within a reasonable time. Restoration, in order to qualify as impracticable, must cost more than the amount by which the property value has been reduced."

We also note that Section 32–03–20, N.D.C.C., provides:

"*Measure of damages for tort.*—For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by law, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

In *Gussner v. Mandan Creamery & Produce Co.,* 78 N.D. 594, 51 N.W.2d 352, 359 (1952), we discussed the determination of value for injury to property under that statute:

"The question still remains as to how that value will be proved. The seeming divergence of authority at this point results from the existence of two methods by which the value may be ascertained. Under one method the proof of damages depends upon showing the value of the real property before and after the removal of the fixtures, the difference being presumptively the value of the fixtures removed. The other method is to show the cost of restoring the fixtures to their proper place without reference to the value of the real estate. We do not believe it is incumbent upon or even proper for this court to decide that where fixtures have been wrongfully removed or destroyed, either one method or the other shall always be used in determining the amount of detriment suffered. The true rule should be that the method best suited for measuring the loss in the particular circumstances of the case should be the one to be used."

Thus, the method for computing damages for injury to property under that statute is similar to the method used for Section 32–23–09.1, N.D. C.C.

1. Section 32–03–09, N.D.C.C., provides:
"*Measure of damages for breach of contract— Damages must be certain.*—For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin."

2. Section 32–03–09.1, N.D.C.C., provides:
"*Measure of damages for injury to property not arising from contract.*—The measure of damages for injury to property caused by the breach of an obligation not arising from contract, except when otherwise expressly provided by law, is presumed to be the reasonable cost of repairs necessary to restore the property to the condition it was in immediately before the injury was inflicted and the reasonable value of the loss of use pending restoration of the property, unless restoration of the property within a reasonable period of time is impossible or impracticable, in which case the measure of damages is presumed to be the difference between the market value of the property immediately before and immediately after the injury and the reasonable value of the loss of use pending replacement of the property. Restoration of the property shall be deemed impracticable when the reasonable cost of necessary repairs and the reasonable value of the loss of use pending restoration is greater than the amount by which the market value of the property has been diminished because of the injury and the reasonable value of the loss of use pending replacement."

In this case the trial court determined that the proper measure of damages was the cost of making the work conform to the contract:

"The Court concludes that the contract was substantially performed and the measure of damages is the cost of making the work conform to the original contract. The cost of repair rather than diminution of value is the correct measure of damages where the house must be made liveable. The Court concludes that a $46,816 figure to repair the physical structure of the house is a reasonable amount to compensate the Swains first in the breach of contract action; second, in the negligence action, and finally, in the breach of implied warranty action."

The Swains' expert, James Glick, a structural engineer, testified that the structural problems in the house would continue to get worse until they were fixed or the structure failed. There was evidence that the value of the house was decreasing and that the house would become worthless if not repaired. There was also evidence that the assessed value of the house had decreased from $68,000 in 1984 to $27,500 prior to trial. Although the cost for repairing the house is not an unsubstantial amount, the evidence supports an inference that the cost to repair the house was lower than the diminution in value. Thus, restoration of the house was neither impracticable nor impossible. *Roll v. Keller, supra; Shimek v. Vogel,* 105 N.W.2d 677 (N.D. 1960). Under these circumstances, we agree with the trial court that the cost to repair was the correct method for measuring damages.

█ The Swains presented evidence that the cost to repair the house was $56,296. The court found that the cost to repair was $46,816. We are not left with a definite and firm conviction that the trial court made a mistake in awarding $46,816 as the cost to repair the house. The trial court's

finding is therefore not clearly erroneous under Rule 52(a), N.D.R.Civ.P.

█ Relying on Section 32–03–04, N.D. C.C.,[3] Great Plains contends that the trial court erred in awarding $10,042.99 in prejudgment interest on the cost to repair the house because the actual costs of repair were subject to reasonable controversy. The Swains respond that merely because Great Plains contested liability for damages does not mean that those damages were uncertain or not capable of calculation under Section 32–03–04, N.D.C.C. Alternatively, the Swains argue that under Section 32–03–05, N.D.C.C., the court did not err in awarding prejudgment interest after Great Plains disclaimed responsibility for the structural problems in the Swains' house in a November 4, 1986 letter.

Section 32–03–05, N.D.C.C., provides:

*"When interest in discretion of court or jury.* In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury."

That statute gives the trier of fact the discretion to award prejudgment interest for the breach of an obligation not arising from contract. *Patch v. Sebelius,* 349 N.W.2d 637 (N.D.1984); *Vasichek v. Thorsen,* 271 N.W.2d 555 (N.D.1978). *See Pfliger v. Peavey Co.,* 310 N.W.2d 742 (N.D. 1981); *Stee v. "L" Monte Industries, Inc.,* 247 N.W.2d 641 (N.D.1976).

In this case the trial court awarded damages for negligence and for breach of contract. Under the negligence theory, the award of prejudgment interest is discretionary with the trier of fact. We cannot say that the trial court abused its discretion in awarding prejudgment interest from the date that Great Plains disclaimed responsibility for the structural problems with the Swains' house.

█ Great Plains also contends that the trial court erred in awarding the Swains

---

**3.** Section 32–03–04, N.D.C.C., provides:
"*Interest on damages.*—Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

$5,928 in moving and storage expenses for their personal property and $3,200 in alternative housing and food expenses while their house was being repaired.

The trial court found that the house would be uninhabitable for two months and that it was necessary to remove all the furniture from the home when it was being repaired. The court also found:

"Plaintiff seeks damages for the estimated cost of $4200 for motel rooms during the repair as well as food costs. However, by renting an apartment or house, plaintiffs could mitigate the housing expenses and also provide a facility for family food preparation.

"The Court concludes that a figure of $1000 per month for a two-month period for rental of accommodations for the Swain family is fair and adequate compensation. In addition, the Court concludes that $125 per person per month food expense for a total of $600 per month for $1200 two months total is reasonable under these circumstances.

"Finally, the need to remove all the furniture from the home appears to be reasonable to secure the personal property when the house is open for repair, and to prevent damage when the basement walls are removed to make repairs and painting is done. Plaintiffs obtained an estimate to pack, remove and store all their furnishings in the amount of $5,928, which this Court finds is a reasonable damage figure."

We are not left with a definite and firm conviction that the trial court made a mistake in awarding the Swains those damages. The trial court's findings are not clearly erroneous under Rule 52(a), N.D.R. Civ.P.

▪ Great Plains finally contends that the trial court erred in awarding $12,000 for lost salary because Garland had to refuse a job offer by his employer in another city in 1987. Great Plains argues that the structural problems with the house were not the proximate cause of Garland's refusal of the job offer and that an award of damages for the lost salary difference was based upon conjecture and speculation. We agree.

In *Merrill Iron & Steel v. Minn–Dak Seeds, Ltd.,* 334 N.W.2d 652, 656 (N.D. 1983), we said:

"There is a clear distinction between the two theories of recovery 'in that damages not even anticipated are recoverable in tort, while only such damages as were reasonably contemplated by the parties at the time of entering into the agreement are recoverable for a breach [of contract].' 25 CJS Damages § 80 at 888 (1966); Section 32–03–09, NDCC (measure of damages for breach of contract); Section 32–03–20, NDCC (measure of damages for tort)."

In *Truscott v. Peterson,* 78 N.D. 498, 50 N.W.2d 245, 257 (1951), we said:

"According to the weight of authority, however, a recovery may be had for [lost profits] where they are reasonably certain in character and are the proximate result of either tort or a breach of contract, or where, in case of contract, they may be reasonably supposed to have been within the contemplation of the parties when the contract was made as the probable result of a breach."

An award of damages for tort or breach of contract must not be based on conjecture or speculation and must be proximately caused by either the tort or the breach of contract. *See, e.g., Truscott, supra; Holecek v. Janke,* 171 N.W.2d 94 (N.D.1969).

Although there was evidence that beginning in 1987 Garland's employer, the federal government, had other career advancement positions available, he did not apply for those positions. According to Garland, he did not apply because of the structural problems with the house, including an inability to sell it without a loss and without an explanation of the physical deterioration. However, the Swains presented no evidence that they tried to sell their house when those positions were available. They did not contact a realtor until 1988, which was after they had sued Great Plains. Moreover, the Swains did not obtain any information about a government program providing them with the option of having

the government purchase their house if job relocation was necessary. We conclude that, under both the contract and tort theories, the Swains did not show that any damage for lost salary was foreseeable and proximately caused by Great Plains. We therefore conclude that the trial court erred in awarding those damages for that claim.

The district court judgment is affirmed in part, reversed in part, and remanded for entry of amended judgment consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE and LEVINE, JJ., concur.

VERNON R. PEDERSON, Surrogate Judge, concurred specially and filed opinion.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, concurring specially.

It was confusing for me to try to understand the concessions made, the trial tactics, and the legal argument presented by Great Plains in this strange case. I agree fully with the application of Rule 52(a), NDRCivP, and the precedent relied upon in the majority opinion. I have not read the transcript of the evidence but the facts that are undisputed nevertheless give the results a definite appearance of a miscarriage of justice. Under the circumstances, unfortunately, I find no basis for a dissent.