JAMES P. MURPHY, Respondent, v. JOHN KASSIS, Appellant.

(228 N. W. 449.)

Opinion filed January 6, 1930.

*Fisk, Craven & Taylor,* for appellant.

*Ivan V. Metzger,* for respondent.

BURKE, Ch. J. In this action the plaintiff recovered $1,640.26. There was a motion for a new trial which was overruled, and the defendant appeals from the order overruling the motion, and from the judgment entered thereon. There is very little conflict in the evidence.

On the 31st day of August, 1927, the plaintiff and the defendant entered into a contract in writing, under which the plaintiff agreed to build a two story brick building in the city of Williston, N. D., furnishing all the material, and all the work for the sum of $15,675. The first floor of the building was to be completed by October 15, 1927, and the whole building to be completed, on or before December 1, 1927. The east wall of the building was to be built of cement, and after the forms had been constructed for the pouring of the cement the defendant concluded to build the east wall of tile, instead of cement, and it was agreed between the parties that the work already done for the building of the cement wall should be torn out, and the wall built of tile at an additional cost of $200. Many other changes were made, extra doors, door frames, windows and window frames. The contract called for ordinary bathtubs, and built-in bathtubs were by agreement installed at an additional expense, the additional items and extras, and fixtures costing according to the plaintiff $1,777.26. This is practically agreed to by the defendant.

At the trial Mr. Metzger, attorney for the plaintiff, stated: "The action is not an action on contract; it is an action on a quantum meruit. . . . The contract itself is conclusive evidence of the value of all things stated in the contract, . . . and the rest of it is a matter of open account and the whole case is on quantum meruit, and not on the contract."

Mr. Craven, attorney for the defendant, said: "The action is a matter of contract and how much material, or what material went into the original contract so far as the action is concerned would be immaterial in getting at the balance due. And, of course, for the extra work where there wasn't any particular agreement I don't mind them then showing what material went into the extra work, but we would

object to the offer in that it contains matter that was entered into by contract and sets forth the price. I wish to state to the court and counsel, to save time, that we are making no charge of the reasonableness of his charges for fixtures at all. We are not attacking his account or his claim for the amount which he claims and alleges that the fixtures cost. The only thing is the building itself." This colloquy arose over an objection to the introduction of book evidence showing the contract price, and an itemized statement of all extras on the job.

It appears from the statements of counsel, that while one says, that it was not an action on contract, and the other says that it is, they both agree that in everything provided for in the contract that was supplied under the contract, or done under the contract without change, or modification, the contract price should govern, and that for all extras and fixtures, the plaintiff was entitled to recover a reasonable price, except, where they had agreed on the value, as in the case of the building of the tile wall on the east side, and the built-in bathtubs. In fact the defense does not claim, that the plaintiff is not entitled to recover for the extras, and fixtures, but it is his contention, that the work on the building was defective, and not in accordance with the contract; that the first floor of the building was to have been completed by the 15th day of October, 1927, and the entire building by December 1, 1927; that said first floor was not completed until November 15, 1927; that the basement was to be nine feet deep from the top of the joist and as it was completed it was only eight feet nine inches; that the cement floor slopes away from the floor drain so that water to the depth of an inch or more stands covering a large area of the basement floor; that the basement wall on the west side was so constructed that water seeps through; that the hard maple floor was unseasoned, and so laid that there are cracks between the boards; that the main stairs were not constructed of good material, or built in a first class manner, and cracked and split; that the boards on the sides were so fastened to the wall that these boards were marred and split and the east base board does not fit snugly to the east wall; that sufficient radiation was not installed to heat the building in cold weather; that one of the floor joists under the floor of the store was old, broken and split; that boards used for door casings of lavatory in store have large black

knots; that the roof leaked; that the building settled; and the plaster cracked; that the walls behind the soil pipe could not be plastered, that plaintiff attempted to remedy this by throwing some rough plaster on these walls; that the first floor was not completed until November 15, 1927, all this to defendant's damage because of the failure to keep and perform the said original contract, including the failure to complete said store room on time in the sum of $2,000.

It is conceded, that the changing of the cement wall to a tile wall caused a delay in the completion of the building. There was the time consumed in the building of the forms, in the tearing down of the forms, and delay in getting the tile which had to be ordered from Iowa. In the interim there had been some very heavy rains, and when the building was inclosed the walls were very damp.

It is the contention of the plaintiff, that the defendant insisted on his putting in the hard maple floor, and the stairs complained of, when the building was very damp; that he told the defendant that the building was too damp to put the floors in at that time, but the defendant insisted on having him put in the floors and build the stairs.

The defendant testified that he did not have any such conversation with the plaintiff, thus, making a question of fact for the jury, and its verdict is conclusive on that question.

"The builder is not responsible for defects arising from doing the work in the manner directed by the owner or his authorized representative, or which are caused by acts of the owner during the progress of the work." 9 C. J. p. 754, § 88; Dale v. United States, 14 Ct. Cl. 514; McKee v. Brandon, 3 Ill. 339; Carroll County v. O'Connor, 137 Ind. 622, 35 N. E. 1006, 37 N. E. 16; Iron Clad Mfg. Co. v. Stanfield, 112 Md. 360, 76 Atl. 854; Hogg v. Jackson & S. Co. — Md. —, 26 Atl. 869; Burke v. Dunbar, 128 Mass. 499; Schliess v. Grand Rapids, 131 Mich. 52, 90 N. W. 700; St. Anthony Falls Water Power Co. v. Eastman, 20 Minn. 277, Gil. 249; Siebert v. Leonard, 17 Minn. 433, Gil. 410; Sun Constr. Co. v. Kendel, 129 N. Y. Supp. 10; Feike v. Columbus & E. R. Co. 5 Ohio C. C. 199, 3 Ohio C. D. 100; Robinson v. Baird, 165 Pa. 505, 30 Atl. 1010; Rohrman v. Steese, 9 Phila. 185; McLane v. De Leyer, 56 N. Y. 619.

There was a delay in the completion of the building, and it is con-

ceded that there were modifications in the construction causing delay, all of which were submitted to the jury under proper instructions and the verdict is final.

In 9 C. J. 787, § 129, the rule supported by an almost unbroken line of decisions is stated as follows: "Where the delay in performance is caused by extra work and alterations directed by the owner, and not contemplated when the original contract was made, the builder cannot, as a general rule, be held liable therefor; and after such alterations the obligation of the builder is to finish within a reasonable time."

Appellant claims, that under the contract the respondent was required to build a basement nine feet deep from the top of the joist to the top of the cement floor; that the basement as constructed is only eight feet and ten inches and in some places only eight feet and nine inches from the top of the joist to the top of the basement floor, and this is one of the chief grounds of defendant's counterclaim for damages.

The respondent claims, that under the contract he was required to dig the basement nine feet deep from the top of the joist to the bottom of the excavation, and the four inch cement basement floor was included in the nine feet. The first page of the specifications starts out with, and is devoted entirely to the execavation as follows, to wit.:

"Excavation.

"Size of basement will be 25' x 80' 9' deep from the top of the floor joist, all excavated material to be removed from the premises. . . .

"Concrete Walls.

"All concrete walls under outside walls of the building to be 12" thick and concrete wall on the east side of the building to be 8" thick. . . .

"Cement Floor.

"Cement floor to be 4" thick. . . ."

The provision relating to the depth of the basement immediately follows the requirements of the contract relating to the other dimen-

sions of the basement and must receive the same construction, that is, if the contract means outside measurement for one it means outside measurements for the other, or if it means inside measurement for one it means inside measurement for the other. It all relates to the same thing, the dimensions of the basement, its length, breadth and depth all in one sentence. The contract as a matter of course means outside measurements for it would be impossible to have a basement 25 feet wide by inside measurements on a 25 foot lot with one foot taken off for the wall on the west side and eight inches on the east side, leaving the basement only 23 feet and 4 inches by inside measurements. It is clear from the reading of all the specifications relating to the excavation, that a basement was to be excavated 25 feet wide, 80 feet long, and 9 feet deep from the top of the joist; that in this basement there is to be built a wall on the west side one foot thick, on the east side a wall eight inches thick, and on the bottom there was to be built a floor four inches thick. It follows that in everything relating to the excavation the respondent complied with the terms of the contract, and the appellant is not entitled to recover damages on this part of his counterclaim. We deem it necessary to construe the contract, for the reason, that the trial judge submitted the question to the jury and as there must be a new trial on another element of damage in the construction of the drain in the basement, the question of the depth of the basement should be, and is eliminated. There are three matters in defendant's favor upon which there is no dispute except as to value. There is the joist in the main floor which the respondent admits is not in compliance with the contract; there is space in the basement twenty feet square which will not drain; and there is the leak in the roof. It is true, that the plaintiff sent a man to make necessary repairs and that the defendant refused to let him make any repairs whatever, but whether the plaintiff is entitled to recover on a substantial performance, or on the quantum meruit the appellant is entitled to recover on his counterclaim the cost of repairing the roof, the joist, and the making of such repairs on the basement floor as are necessary to drain the entire floor. 9 C. J. 739, 885, §§ 78, 227.

The jury inspected the building before the taking of any testimony and again after the testimony was all in, and we are of the opinion

that all the other questions in the case were submitted to the jury under proper instructions, and settled by the verdict.

The judgment is reversed, and a new trial is ordered to determine the cost of repairing the roof, the joist, and the basement floor with costs to the defendant.

CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur.