Emil DOBLER, doing business as Queen City Lumber, Plaintiff and Appellant,

v.

Harry L. MALLOY and Lorraine Malloy, Defendants and Appellees.

Civ. No. 8894.

Supreme Court of North Dakota.

Dec. 11, 1973.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellant.

Freed, Dynes & Malloy, Dickinson, for defendants and appellees.

VOGEL, Judge.

This dispute between a housebuilder, Dobler, and the owner of the house, Malloy, is before us for the second time. See Dobler v. Malloy, 190 N.W.2d 46 (N.D. 1971).

On the former appeal by Dobler, he succeeded in obtaining a new trial and a determination that Malloy had anticipatorily breached the contract between them. At the new trial, the court allowed the pleadings to be amended, retried the issues of damages, and, to Dobler's apparent dismay, awarded more damages to Malloy than were awarded at the first trial.

Having won a victory here which, after the retrial in the district court, turned out to be Pyrrhic, Dobler is back in this court demanding a third trial. We must disappoint him.

We held in the earlier opinion that the owner breached the contract anticipatorily, and that the evidence was insufficient to determine the amount of the damages. The opinion concluded with these words:

"The judgment of the district court is therefore reversed and the case is remanded to the district court for a new trial to determine the amount of damages due Dobler in accordance with the law set forth in this opinion. From this

amount the district court will allow Malloy a setoff to the extent that he can prove damages in the inferior construction of his home as the result of Dobler's phase of the work on his home." Dobler v. Malloy, *supra*, at p. 52.

Upon remand, a new trial was held before a different judge. He permitted the owner to amend the pleadings to allege (1) specific damages for defects in the house discovered after a flood in May of 1970 (within a month or two after the first trial of the case), due to lack of proper elevation of the house, and (2) a defective joist system. It was alleged that these defects were unknown to the owner at the time of the previous trial and that they were due to the fault of the builder. The builder admits that ample time was allowed between the notice of the amendment and the trial to permit adequate preparation for trial. He claims, however, that the trial court exceeded the scope of its mandate in allowing the amendment.

He cites Gunsch v. Gunsch, 73 N.W.2d 345 (N.D.1955), to the effect that it is the duty of the lower court, upon a remand, to comply with the mandate of the Supreme Court. Of course, this is a correct statement of the law. Our most recent statement on the proposition is found in Bjerken v. Ames Sand & Gravel Co., 206 N.W.2d 884 (N.D.1973).

However, the court is not shackled to the precise pleadings and evidence of the prior trial unless so limited by the terms of the remand. It was held in Kern v. Kelner, 75 N.D. 703, 32 N.W.2d 169 (1948), that upon a remand it is the duty of the district court to examine the opinion of the Supreme Court and to determine from it and from the nature of the case what further proceedings may properly be had in the action, consistent with the decision and order of the Supreme Court and in conformity with law, and, when the controversy has not been finally disposed of, the court below is free to make any order or direction in the further progress of the

**514**

case not inconsistent with the decision and opinion of the appellate court, and conformable to law and justice, and that the lower court may, unless forbidden by the decision of the appellate court, grant permission to amend the pleadings or file supplemental pleadings where necessary or proper in furtherance of justice.

In the case now before us, the district court permitted an amendment to the counterclaim of the owner to allege damages claimed to have been caused by flooding due to construction of the house at a lower elevation than was agreed upon and the cost of strengthening the structure of the house made necessary by using joists of too broad a span and insufficient strength.

■ We hold that these amendments were permissible, were within the scope of the mandate, and that they relate to "damages in the inferior construction of his home as the result of Dobler's phase of the work on his home."

Upon the retrial, the court, without a jury, determined that Dobler was entitled to recover $7,927.95 plus $371.60 costs on the first trial and appeal, and that the defendants, the Malloys, were entitled to recover from Dobler $5,345.81 damages because of the inferior joist system under the main floor, $12,746.80 for flood damage incurred because of Dobler's failure to construct the house at the elevation agreed upon, and $10,000 diminution in market value of the house as the result of the failure to construct at the elevation agreed upon.

Dobler appealed, alleging as further grounds that Malloy was bound by acceptance of labor and materials by the foreman, Olheiser, that Malloy's damages resulted from his failure to supply adequate plans and specifications, that the court erred in allowing compensation for flood damage occurring after the first trial, and that allowing damages for flooding and reduction in market value caused duplication of damages.

■ The court made specific findings on many disputed items of costs and expenses in the construction of the house: that the act of Malloys in taking over the construction of the house did not constitute a waiver of defects then existing; that under the contract between the parties it was the duty of Dobler to plan for and install the joists in a manner compatible with the best construction practices in the Dickinson area; that the joists were of less than the best quality and were substantially overspanned; that the parties agreed that the elevation of the Malloy house would be the same as the elevation of the Gackle house a few hundred feet away; and that the Malloys believed that their house was constructed to such elevation until the flood of May 1970, when it was discovered that the elevation of their house was much lower; that if the house had been constructed to the agreed elevation there would have been no damage from flooding in May of 1970; and that the failure to build the house to the agreed elevation resulted in a loss of market value of $10,000. The court also found that David Olheiser, the foreman, was an employee of Dobler and not an agent of Malloy, as contended by Dobler. The findings of fact of the court, trying the case without a jury, are binding upon us unless clearly erroneous. Rule 52(a), N.D.R.Civ.P.

■ In addition to hearing all the testimony and having an opportunity to observe the demeanor of the witnesses, the trial judge, with the consent of the parties, made a personal inspection of the Malloy house. Such a view of the premises aided him in understanding and applying the evidence adduced at the trial. Little v. Burleigh County, 82 N.W.2d 603 (N.D.1957). While we have never ruled on whether a view by a jury is in itself evidence or whether a jury view is allowed solely to enable the jurors better to understand the situation and apply the evidence in the case [see 89 C.J.S. Trial § 464, pp. 100–102, for statement of opposing views], we do observe that we believe a view by the trial

judge serves the same function as a jury view and that, at the very least, it provides one more reason (in addition to his opportunity to observe the demeanor of the witnesses) why we should give great weight to the findings of the trial court.

Dobler claims that when Malloy breached the contract by refusing to comply with the contract and taking over the incomplete job (as we determined he did in the earlier appeal), Malloy thereby "accepted" the work that had previously been done on the house and he was thereafter precluded from claiming damages for defective workmanship. This argument is based upon certain language of the contract and a heavy reliance upon City of Granville v. Kovash, Inc., 118 N.W.2d 354 (N.D.1962). The language of the contract is:

"It is further agreed that the First Party [Dobler] agrees to employ David Olheiser who shall be in charge of all phases of construction and generally an overseer and foreman with the absolute right to inspect and reject all materials and labor put on or into the premises, with the owner having final authority.

"It is further agreed that the owner or his agent shall have the right of inspection at any time and in the event that owner or his agents object to any material or to the quality of the labor being performed, that the owner shall have the right to terminate this agreement for good cause shown unless such condition or conditions are corrected by First Party within five (5) days' time. . . ."

Two excerpts from the *Granville* opinion show that Dobler's reliance upon that decision is misplaced:

"The great weight of authority holds that a provision in a contract such as the one before us, which makes the engineer or other qualified person the sole judge of the quality and acceptability of the work, is valid and binding on the parties and that the action of the engineer under

such contract, approving the work and the manner of performance of the contract, and the acceptance of such approval by action of the governing body of the City is final and conclusive on the parties in the absence of a showing of fraud, collusion, concealment which prevented the discovery of the failure on the part of the contractor to comply with contract terms, or such gross mistake as would imply bad faith on the part of the engineer or failure on his part to exercise honest judgment. [Citations omitted.]

. . . . . .

"If the contract had not provided for the complete supervision of the work by the engineer and had not, in clear and unmistakable language, made the engineer's approval of the work final and conclusive, upon acceptance thereof by the governing body of the City, then the rule that acceptance of a job in ignorance of any defects does not prevent recovery, would apply." City of Granville v. Kovash, Inc., *supra,* at p. 359.

It is clear in the case before us that the contract included no provision making approval by Olheiser "final and conclusive on the parties" nor, in fact, is there any provision giving Olheiser control over the design of the house, as distinguished from the work and materials going into it. Further, there is nothing in this case equivalent to the acceptance of the project by the governing body of the City of Granville. On the contrary, the action of Malloy in refusing to allow the contractor to continue with the work is a rejection rather than an acceptance of his work.

The contract itself indicates that acceptance, if it occurred at all, would follow completion, since it provides that the owner would withhold "10% of all monies due until final completion of the project and approval by owner or his agents."

We hold that Malloy is not precluded from recovery for defects of which he was unaware at the time of the first trial.

Much of Dobler's argument is devoted to conclusions drawn from the basic premise that Olheiser was an agent of Malloy and that Malloy is thereby bound by the actions of Olheiser. The flaw in this argument is that the contract provision we quoted above shows that Olheiser was, by the specific terms of the contract, an employee of Dobler, not of Malloy. We note, too, that Dobler drew part of his own compensation on a cost-plus basis, and the cost included the salary of Olheiser. The mere fact that Malloy agreed to Olheiser's employment does not make him an employee of Malloy contrary to the specific terms of the contract between the parties.

Dobler further argues that the inadequacy of the joists and the elevation of the building are due to the lack of adequate plans or specifications by the owner. Yet the contract provides that Dobler "will erect a dwelling according to plans and specifications on hand and those that have been agreed upon orally between the parties hereto and David Olheiser." If the plans and specifications on hand were not sufficient, or if the oral agreements between the parties were inadequate for the purpose, Dobler, being an experienced builder, should have been aware of the facts and should have declined to enter into the contract. The contract further provides that Dobler will supply materials "of top quality, equipment, skills and labor necessary to do a proficient workmanlike job according to the highest standards of labor in the Dickinson area." This is an express warranty. Annot., 25 A.L.R.3d 426; Busker v. Sokolowski, 203 N.W.2d 301 (Iowa 1972).

It is a matter of common knowledge that most homes built by arrangement between the owner and the contractor are not built on the basis of complete, detailed plans and specifications, such as are customary in large commercial buildings and projects. For this, the owner is no more to blame than is the contractor.

Although the precise matter has not been before this court previously, we adopt the holding of the Supreme Court of Minnesota in Robertson Lumber Co. v. Stephen Farmers Cooperative Elevator Co., 274 Minn. 17, 143 N.W.2d 622 (1966), that the doctrine of implied warranty of fitness for the purpose applies to construction contracts under circumstances where (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, designs, specifications, details, or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended.

Here, it is plain that all of these requirements are met, with the possible exception of No. 3. The owner here furnished a floor plan to an architect, who drew expanded floor plans of the first floor and the basement. Such floor plans were submitted to contractors for the purpose of securing bids, and the contractors thereupon submitted bids based upon their own computations of what materials and labor would be required. Dobler was one of those who submitted such a bid, and his bid was accepted. The furnishing of a floor plan is not the furnishing of plans, designs, specifications, details, or blueprints. We hold that Dobler impliedly warranted the fitness of the building and that he breached his warranty. See Busker v. Sokolowski, *supra*; Waggoner v. Midwestern Development, Inc., 83 S.D. 57, 154 N.W.2d 803 (1967); Weeks v. Slavik Builders, Inc., 24 Mich.App. 621, 180 N.W.2d 503, aff'd 384 Mich. 257, 181 N.W.2d 271 (1970); Annot., 25 A.L.R.3d 383, 413.

Theis v. Heuer, 280 N.E.2d 300 (Ind. 1972), and Smith v. Old Warson Development Co., 479 S.W.2d 795 (Mo.1972), outline the speedy adoption of the same rule

in many jurisdictions as to implied warranty by builder-vendors.

■ The Malloy house was constructed in a bend of the Heart River near Dickinson. The Malloys claim that they agreed with Dobler that their house would be built at an elevation equal to that of the Gackle home, which was located several hundred feet away. Olheiser claims that the Malloy house was to be built at an elevation based on some point at the center of a road near the house, with one-quarter-inch-per-foot grade rise from the road to the house. The road elevation was approximately 95.8 or 95.9 feet. [All measurements are based upon an arbitrarily fixed point nearby.] Adding one-quarter inch per foot of grade rise from the road to the house (a distance of approximately 125 feet) would require a rise of thirty-one inches, resulting in an elevation at the top of the Malloy basement of about 98.4 or 98.5 feet. Adding the height of the joists, eleven or twelve inches, to the height of the top of the basement would give a floor level of about 99.4 or 99.5 feet, which would be about six inches below the elevation of the Gackle floor. Thus the discrepancy between the Malloy testimony and the Olheiser testimony is only about six inches.

By way of contrast, a survey shows that the elevation of the ground floor of the Malloy house was approximately 2.2 feet below the elevation of the Gackle house, the former having an elevation of 97.8 feet and the latter 100.0 feet.

The depth of flooding of the first floor of the Malloy house, upon which the claim of damages is based, was twenty-one inches. Thus the court was justified in finding that the flood damage to the Malloy house (except for the basement, the flooding of which was relatively harmless) would not have occurred had it been built at the agreed elevation. The Gackle house was not flooded.

■ With regard to the length of span of the joists, it is evident that the span exceeded Federal Housing Administration and other standards of good construction. The lower court obviously found that Malloy, who claimed no expertise in construction, relied, and had the right under the contract between the parties to rely, upon Olheiser and Dobler, who had such expertise, to comply with good construction practices in the building of the house. While the Malloys no doubt made some changes in the plans, and such plans may have had an effect upon interior supports for some of the weak joists, there is no showing that the builder objected to any such changes or that the Malloys were aware of any weaknesses that would result. Further, there is evidence that some of the joists were not of the quality required by the contract.

The appellant relies heavily upon Murphy v. Kassis, 59 N.D. 35, 228 N.W. 449, 450 (1930), wherein the statement is made that "the builder is not responsible for defects arising from doing the work in the manner directed by the owner or his authorized representative, or which are caused by acts of the owner during the progress of the work." But the quoted statement is preceded by the following, which clearly shows that the court was referring to the insistence of the owner that the work be done in a manner opposed by the contractor:

> "It is the contention of the plaintiff that the defendant insisted on his putting in the hard maple floor, and the stairs complained of, when the building was very damp; that he told the defendant that the building was too damp to put the floors in at that time, but the defendant insisted on having him put in the floors and build the stairs.

> "The defendant testified that he did not have any such conversation with the plaintiff, thus making a question of fact for the jury, and its verdict is conclusive on that question."

**518**

The appellant contends that the court duplicated damages in allowing $12,746.80 for damage to the house (which would not have occurred if the house had been built to the agreed elevation), and in addition $10,000 for diminution in value of the home. In spite of the sarcastic statement in appellant's brief that "this is a double recovery of damages which is not countenanced anywhere but in the District Court of Stark County, apparently," we find no error in the determination. See Dierickx v. Vulcan Industries, 10 Mich. App. 67, 158 N.W.2d 778, 785 (1968). The $12,746.80 figure compensates the owner for the damage already done to the house because of the appellant's construction of it at an elevation which was too low. Compensating the owner for that damage does not change the fact that the house remains at an elevation which is lower than contracted for and therefore more subject to future flood damage. There is testimony which, if believed by the trial judge, as it obviously was, supports a determination that the house remains worth $10,000 less than it would have been worth if constructed at the proper elevation.

Appellant cites Shimek v. Vogel, 105 N. W.2d 677 (N.D.1960), and 13 Am.Jur.2d, Building and Construction Contracts, Section 79, at page 79, as supporting the rule that the measure of damages is the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and that the cost therefor would not be greatly disproportionate to the results to be obtained. Such is the rule, and the evidence here supports a finding that raising the house to the proper level would cost $10,000, and also that the house is worth $10,000 less than if it had been built to the agreed elevation. In either case, the owner is entitled to the $10,000 damages for lessened market value in addition to compensation for past flooding damage.

There are, of course, two possible measures of damages. If the contract is substantially performed, and the breach of contract can be remedied without taking down and reconstructing a substantial portion of the building, the amount of damages is the cost of making the work conform to the contract. Or, where the defects cannot be remedied without reconstruction of a substantial portion of the work, the measure of damage is the difference in value between what it would have been if built according to contract and what was actually built. Karlinski v. P. R. & H. Lumber & Construction Co., 68 N.D. 522, 281 N.W. 898 (1938); Restatement, Contracts, Vol. 1, Sec. 346; Annot., 76 A. L.R.2d 805. Here, there is substantial evidence to justify an award of $10,000 under either measure of damage, and to conclude that raising a house and adding to the height of the foundation is a reconstruction of a substantial portion of the work. We find no error.

In either case, damages from flooding prior to trial would be recoverable.

The trial court carefully considered all of the evidence and examined the house. Some of Malloys' damage claims, as well as Dobler's, were reduced or disallowed. The findings are not clearly erroneous and are amply supported by the evidence, and we believe the result is correct.

Affirmed.

ERICKSTAD, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.