**CARLSON HOMES, INC., a corporation, Plaintiff and Appellant,**

v.

**Brian J. MESSMER and Dianna L. Messmer, Defendants and Appellees.**

Civ. No. 9875.

Supreme Court of North Dakota.

June 25, 1981.

Freed, Dynes, Malloy & Reichert, Dickinson, for plaintiff and appellant; argued by George T. Dynes, Dickinson.

Thomas F. Murtha, Dickinson, for defendants and appellees.

SAND, Justice.

The plaintiff, Carlson Homes, Inc. [Carlson], appealed from a $3,500.00 judgment, on the counterclaim of the defendants, Brian J. and Dianna L. Messmer [Messmers].

Carlson initially began this action against the Messmers for the balance due on a home construction contract. The Messmers' answer denied liability for the balance due on the contract and interposed a counterclaim which alleged that Carlson was "negligent in the performance of its landscaping work and did not complete the landscaping in a workmanlike manner." The Messmers' counterclaim further alleged that "due to the negligence and unworkmanlike manner in the landscaping of the lot purchased by the . . . [Messmers], the back portion of . . . [the] lot is washing away and whole sections are dropping into a drainage ditch adjacent to the lot, due to the unworkmanlike manner in which the fill was compacted." The Messmers essentially admitted they owed the balance on the home construction contract when the case was set for trial, and the only factual dispute and legal issue involved in the trial before the district court concerned the Messmers' counterclaim.

Carlson and the Messmers executed a written agreement dated 4 Oct 1977 whereby Carlson agreed to build a home in Dickinson, North Dakota, for the Messmers. The lot for the Messmers' home borders a drainage ditch and extends to the edge of the city's easement for the drainage ditch. The city's easement contains the slope on each side of the drainage ditch.

The Farmers Home Administration financed the Messmers' home and one of their loan conditions required the contractor to provide a plat of the lot with the elevations at the four corners of the lot. The elevations on the plat provided by Carlson reflected that the Messmers' back yard would be relatively level. The Messmers purchased the lot with the understanding that the back yard would be level to accommodate a garden and other family activities. At the time the Messmers purchased their lot, the only construction completed on their house was the foundation, and the back yard was not yet at the level indicated on the plat. The area manager for Carlson, Chester Willer, indicated to the Messmers that he lived by a drainage ditch and that it would be no problem.

When the Messmers moved into their home, the back yard was still not at the level indicated on the plat. The record reflects that the lot was gradually sloped to accommodate an approximately 15-foot drop in height from the front of their lot to the back of their lot where the drainage ditch was located. The Messmers insisted that Carlson comply with the elevations in the plat, and Carlson hauled in several loads of dirt to raise the Messmers' back yard to the elevation reflected in the plat. However, this resulted in a much steeper slope on the drainage ditch. Because of the steeper slope and wind and rain erosion, the Messmers encountered problems keeping their back yard level. Part of the dirt which Carlson used to level the Messmers' lot eventually washed away and was replaced by the Messmers.

The elevation of the Messmers' lot is presently in accordance with that indicated in the plat. However, in order to maintain

this elevation, a retaining wall of some type on the bank of the drainage ditch is necessary to prevent the dirt from washing away.

The district court's judgment determined that the "landscaping plan failed to properly set out the elevation in view of the drainage ditch to the south of the property and that . . . [Carlsons'] negligence in arranging the levels and elevation of the lot made the lot practically, and to some degree, unfit or unmaintainable on the part of the . . . [Messmers] in view of the steep slope of the drainage ditch." The district court's judgment further provided for a $3,500.00 judgment to the Messmers "due to the negligent landscaping" of Carlson. Carlson appealed from that judgment.

The first issue raised by Carlson is whether or not there was sufficient evidence of negligence to sustain the trial court's decision finding Carlson liable. Carlson asserts that the Messmers' theory of the case was that their back yard was improperly compacted and that there was no evidence presented which suggested improper compaction.

However, the Messmers' counterclaim alleges that Carlson was negligent in the performance of its landscaping work and that Carlson did not complete the landscaping in a workmanlike manner, and further alleges that due to the negligence and unworkmanlike manner in the landscaping of the lot purchased by the Messmers that that portion of the lot was washing away and whole sections were dropping into the drainage ditch adjacent to the lot. Furthermore, based on the statements contained in the district court's judgment, it is apparent that the district court decision was based upon "negligent landscaping."

■ In this instance, we believe there was sufficient evidence to support the trial court's finding that Carlson was negligent in landscaping the Messmers' back yard and, therefore, such a finding was not clearly erroneous pursuant to Rule 52(a), North Dakota Rules of Civil Procedure.

■ "Actionable negligence" is the existence of a duty or obligation on the part of one to protect another from injury, the failure to discharge that duty, and the resulting injury to the other proximately caused by the breach of duty. *Brauer v. James J. Igoe & Sons Construction Inc.*, 186 N.W.2d 459 (N.D.1971); see, 2 Words and Phrases, p. 101 et seq. Generally, questions of negligence and proximate cause are fact questions, unless the evidence is such that reasonable minds can draw but one conclusion therefrom. *Brauer v. James J. Igoe & Sons Construction, Inc., supra.*

The record reflects that Carlson was an experienced homebuilder. Carlson had built several homes in the Dickinson area and in particular in the development near the Messmer lot. At the time the agreements and contracts between Carlson and the Messmers were executed, the development was only roughly sketched out. Some streets were already located and the basements of the houses were poured. However, none of the landscaping had been done. The only thing the Messmers could rely upon were the plans submitted by Carlson which reflected a relatively level lot approximately 70' × 117'. The Messmers were interested in a level lot because of their gardening activities. Dianna Messmer, in particular, testified that she was interested in horticulture and that she considered her yard as her classroom. Furthermore, the record reflects that Chester Willer told the Messmers that the drainage ditch would present no problem. Willer also testified that the plans which included the elevation readings were bad.

■ When a vendee such as the Messmers buys a house from an experienced developer such as Carlson, the vendee, to some degree, must rely upon the experience and skill of the developer to complete the house according to the plans. In conjunction with this, it is necessarily implied if the plans prepared by the developer are complied with, the finished product will not present any problems to the vendee. This reliance by the vendee puts the developer in a position in which it owes a duty to the vendee that the plans will work as designed.

Based on Carlson's home construction experience and the Messmers' expectations for their lot, coupled with the drainage and landscaping elevations in the landscaping plan submitted by Carlson, we conclude there was sufficient evidence to support the trial court's finding that Carlson was negligent in arranging the levels of the Messmers' lot.

■ Although we believe that Carlson's actions fit within actionable negligence, we recognize that Carlson's actions also fit into the concept of law dealing with warranties. See, Annot., 25 A.L.R.3d 383 (1969). In this respect we believe the portion of the Messmers' counterclaim which alleges that the landscaping was done in an unworkmanlike manner adequately outlines the warranty theory. Furthermore, there was evidence introduced at trial without objection by counsel which reflects that Willer told the Messmers that the drainage ditch would present no problem. Willer's testimony to the effect that the plans were bad was also introduced in a similar manner. This evidence relates to recovery upon a warranty theory and was tried by implied consent of the parties. Rule 15(b), N.D.R. Civ.P. Because these issues were tried with implied consent of the parties, we do not believe the trial court abused its discretion in permitting the Messmers to amend their pleadings after the trial to conform to the evidence. *Perdue v. Knudson*, 179 N.W.2d 416 (N.D.1970).

The last issue raised by Carlson is that because they specifically followed the Messmers' instructions and requests in raising the elevation of the back yard, they should be absolved from any liability for damages as a result of their compliance.

In support of their position, Carlson cites several cases for the general rule that a builder is not responsible for complaints arising from doing the work in the manner directed by the owner. *Mayville-Portland School District No. 10 v. C. L. Linfoot Company*, 261 N.W.2d 907 (N.D.1978); *Dittmer v. Nokleberg*, 219 N.W.2d 201 (N.D.1974); *Dobler v. Malloy*, 214 N.W.2d 510 (N.D. 1973); *Murphy v. Kassis*, 59 N.D. 29, 228 N.W. 449 (1930). In *Mayville-Portland School District No. 10 v. C. L. Linfoot Company, supra*, at 911, we stated that this rule requires that the defects arise from the work being performed in the manner directed, and implies that the defects are caused by the directions.

■ These cases all contemplate a situation in which the plans and specifications which are alleged to be defective were submitted by a party other than the contractor. In this instance the plans were originally submitted by Carlson and accepted by the Messmers. The Messmers had a legal right to have their house completed according to the elevations as set out in the plans. In fact, Carlson concedes this in their brief when they recognize the Messmers' right to insist upon strict compliance with those plans.

We do not believe a party should be permitted to draw up an unworkable plan for a project to promote a sale and then later, when damages result, be permitted to escape liability on the basis that the plan was unworkable. "No one can take advantage of his own wrong." NDCC § 31–11–05(8).

For reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.