SHEYENNE VALLEY LUMBER
COMPANY, Plaintiff, Appellee
and Cross-Appellant,

v.

Jorgen NOKLEBERG, Defendant,
Appellant and Cross-Appellee.

Civ. No. 10099.

Supreme Court of North Dakota.

April 29, 1982.

**121**

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for plaintiff, appellee and cross-appellant;  argued by Leland F. Hagen, West Fargo.

Armond G. Erickson and Steven Aakre of Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for defendant, appellant and cross-appellee;  argued by Erickson, Fargo.

PAULSON, Justice.

This is an appeal by the defendant, Jorgen Nokleberg [Nokleberg], from a judgment dated August 8, 1981, by the District Court of Cass County in the sum of $10,447.99.  The plaintiff, Sheyenne Valley Lumber Company [Sheyenne], has cross-appealed from the judgment.  We modify the judgment and, as modified, we affirm.

Sheyenne commenced an action alleging that certain lumber and materials were delivered by Sheyenne to Nokleberg of the value of $23,637.31, that Nokleberg had performed services for Sheyenne in the sum of $10,334.00, and, accordingly, was indebted to Sheyenne in the sum of $13,303.31, together with interest, costs, and disbursements.

Nokleberg interposed an answer and counterclaim denying the total amount due on the purchases, alleging that some of the claims for purchases were barred by the statute of limitations; that there were excess charges as well as overcharges; that there was an agreement whereby Nokleberg would receive certain setoffs from Sheyenne; that Nokleberg further counterclaimed for services rendered by him in the sum of $26,587.00, including the storage of insulation for Sheyenne in the sum of $1,200.00; that Sheyenne agreed to furnish lumber and materials for a 12-plex for $27,000.00, but Nokleberg was over-billed in the

sum of $7,944.00; and that Nokleberg returned certain materials to Sheyenne from the site of the 12-plex, for which he was not credited by Sheyenne. Sheyenne filed a timely reply which denied the counterclaim.

Sheyenne is located in Leonard, North Dakota, and Nokleberg is a carpenter and contractor who also resides in Leonard. Sheyenne often contracted with some of its customers for the construction of homes and buildings. Nokleberg, as a carpenter and a contractor, constructed some of these buildings for Sheyenne. After each such construction contract was completed, Sheyenne paid for Nokleberg's services by either issuing checks to Nokleberg or by crediting Nokleberg's account for materials which Nokleberg had purchased from Sheyenne as an independent contractor. This particular course of conducting business was commenced in September of 1970 and continued through August of 1975.

The oral agreement between Sheyenne and Nokleberg for the purchase of materials and the furnishing of labor was informal. The invoices for the merchandise purchased by Nokleberg were not always delivered to him at the various times of purchase. Harold Harris, who is the owner of Sheyenne, was permitted by Nokleberg to use his own discretion when paying accounts incurred by Nokleberg. Harris also did not refuse to accept Nokleberg's oral statements with reference to the number of hours Nokleberg was employed on Sheyenne contracts. Nokleberg's work hours were not supported by written time sheets, nor did Harris make any request for such written statements to verify the hours worked by Nokleberg. Sheyenne's forwarding of the monthly statements showing the purchases and credits with reference to Nokleberg's account with Sheyenne, as well as the times payments were made by Nokleberg or credits were given by Sheyenne, varied because of Nokleberg's acting in the dual capacity of both a carpenter for Sheyenne and as an independent contractor.

In August of 1975, when the business relationship between Sheyenne and Nokleberg terminated, there were disputes with reference to the accounts between Sheyenne and Nokleberg concerning materials and labor. Sheyenne and Nokleberg were unable to amicably settle their disputes and subsequently Sheyenne commenced this action.

Thereafter Sheyenne filed a motion and notice of motion for the appointment of a special master to determine matters of auditing and accounting between the parties and, further, to determine the status of the accounts between Sheyenne and Nokleberg. Sheyenne and Nokleberg both agreed that a special master be appointed for these purposes. The district court then, by an order dated February 8, 1979, appointed Darrel K. Grande as special master. On April 1, 1980, the special master submitted his report to the court, which showed that the total charges incurred by Nokleberg to Sheyenne from September 29, 1970, through August 1975 totaled $161,757.57; and total credits given Nokleberg by Sheyenne were $139,843.31, leaving a balance of $21,914.26. Sheyenne, shortly thereafter, by letter conceded that Nokleberg was entitled to an additional credit of $6,880.00, thereby reducing the amount owed Sheyenne by Nokleberg to $15,034.26. The master's reports are based upon examination of the records which pertain to the business transactions between Sheyenne and Nokleberg.

The special master on June 9, 1980, submitted an additional report listing the invoices that were missing from the statements, which totaled $5,545.83, a listing of invoices which were posted in error, totaling $23.50, a listing of invoices which were not posted to the statements, totaling $249.23, as well as credits on the Sprunk job, in the sum of $6,000.00.

A bench trial was held and the court awarded Sheyenne a judgment of $10,447.99. Sheyenne and Nokleberg both appealed from the judgment.

Nokleberg has raised the following issues in his appeal:

1. Were the trial court's findings of fact clearly erroneous in finding that Nokleberg failed to establish that Sheyenne owed him for the following:

A. Labor on Alvin Wahl machine shed;

B. Labor on Alan Brown pole barn;

C. Concrete forms, ties, and oil;

D. Labor for painting of 4–H building;

E. Return of plywood from Bernie Anderson house;

F. Storage of insulation in Nokleberg's barn?

2. Are the trial court's findings clearly erroneous with reference to the amounts awarded to Sheyenne against Nokleberg for the amounts shown on the invoices missing from Sheyenne's records; and did the court commit error in admitting evidence of the missing invoices under the business records exception, pursuant to Rule 803(6), (7), North Dakota Rules of Evidence?

3. Were the trial court's findings clearly erroneous with reference to the construction of the 12-plex

a. In failing to rule on Nokleberg's claim for an overcharge on doors by Sheyenne;

b. In finding Sheyenne did not make a bid of $27,000.00 for materials for such 12-plex;

c. In finding Nokleberg failed to establish a credit for returned materials?

Sheyenne raises the following issues on its cross-appeal:

1. Did the trial court make a clearly erroneous finding in deciding that Nokleberg was entitled to a credit of $1,075.00 for labor he performed on the Harry Wadeson garage?

2. Did the trial court make a clearly erroneous finding of fact in deciding that Nokleberg was entitled to a credit of $337.20?

The scope of review of this court should be governed by Rule 52(a), of the North Dakota Rules of Civil Procedure, wherein it states, in pertinent part:

"RULE 52—FINDINGS BY THE COURT

"(a) Effect. ... Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility· of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court...."

The district court found that Sheyenne sold and delivered to Nokleberg certain lumber and materials in the sum of $10,447.99 which remains unpaid. Nokleberg, however, in his answer and counterclaim denies that there is any such sum owing to Sheyenne, and claims that he has been charged in excess of the agreed prices for some of the materials, that certain credits to which he is entitled have not been reflected in Sheyenne's records, and that he is entitled to credits which total $21,500.00; that, in addition, Nokleberg claims to have performed services for Sheyenne in the hauling and unloading of lumber for which he should receive a credit of $5,000.00; that he claims he is entitled to the sum of $1,200.00 rental for the storage of insulation belonging to Sheyenne; that he claims to have been overcharged on a 12-plex in the sum of $7,944.00 because Sheyenne originally bid $27,000.00 on certain materials for the 12-plex and then at a later date billed Nokleberg for $34,944.00; and, finally, Nokleberg claims that he did not receive credits for certain merchandise which he returned to Sheyenne.

The court further indicated that Sheyenne was owned and managed by Harold Harris, and that his wife, Mrs. Harris, was the bookkeeper during all of the period from September of 1970 through August of 1975.

As heretofore mentioned, Sheyenne entered into contracts with some of its customers to furnish materials and labor for the construction of houses and buildings, and Nokleberg performed the labor for the construction of such buildings for Sheyenne, for which Nokleberg was paid by Sheyenne either by checks or by credits to his account. In addition, Nokleberg purchased materials individually from Sheyenne for the construction of buildings which Nokleberg had contracted to build.

The court further found that Sheyenne's bookkeeping system was similar to the bookkeeping systems used by other retail merchants. Briefly, the system consisted of preparing sales invoices in triplicate, the original white invoice remaining with Sheyenne, the yellow copy being given to the purchaser at the time of purchase, and the pink copy being kept by Sheyenne and amounts posted in the regular course of its business by Sheyenne's owner. Sheyenne generally, but not always, followed the customary business procedure of mailing monthly statements to each of its customers and usually attached the pink copy of the invoice to each of the monthly statements. An examination of the form of the monthly statement showed provision for the number of the invoice and the respective amount of each charge or credit to be listed thereon.

■ Nokleberg contends that he was entitled to a 10% discount on all purchases from Sheyenne. This discount would have amounted to 10% of $161,757.57, or $16,175.76. In support thereof, Nokleberg testified that other lumber companies in the area gave a 10% discount to carpenters. A review of the record fails to indicate that Nokleberg at any time during the period covered by the transactions at issue had ever requested such discount from Sheyenne, and Nokleberg did not at any time object to not receiving the 10% discount until suit was commenced herein. Sheyenne denied ever having offered Nokleberg any such discount and also denied that it was a customary business practice in the area to do so. The court found that Nokleberg was not entitled to the 10% discount and this finding is supported by the evidence, and is not clearly erroneous. Rule 52(a), N.D.R.Civ.P. *Eakman v. Robb*, 237 N.W.2d 423 (N.D.1973).

As this court stated, in *Hager v. Devils Lake Public School Dist.*, 301 N.W.2d 630, 634 (1981):

"The custom or usage must be proved as any other fact. *Peterson v. McCarney*, 254 N.W.2d 438 (N.D.1977). Whether or not a custom or usage exists is a question of fact."

The court further found that the special master gave credit to Nokleberg, as of December 21, 1971, for the sum of $11,154.67, which shows an additional credit of $337.20, resulting in an aggregate total credit of $11,491.87. Sheyenne did not refute this credit and, accordingly, the court granted the additional credit in the sum of $337.20 to Nokleberg.

■ Nokleberg further contends that he is entitled to an additional credit of $4,500.00. This sum is represented by $725.00 (for hauling, loading, and unloading of lumber and materials on the Kenneth Anderson farm, including therein the sum of $75.00 for Sheyenne's failure to deliver materials to the job site); unloading at the Lisbon 12-plex site, $640.00; and an average of $150.00 each at other miscellaneous job sites. A perusal of the record reveals that Sheyenne disputed Nokleberg's claim of $4,500.00 and that such claim was refuted not only by Sheyenne's owner and manager, but also by Kenneth Erickson, a former employee of Sheyenne's who was well acquainted with Nokleberg and the carpenters who were associated with him. Furthermore, Nokleberg at no time during the 5-year period at issue ever requested any offsets or credits for the loading and unloading of lumber and materials until after this action was instituted; nor did he refute the testimony of Kenneth Erickson to the effect that Sheyenne's delivery of materials was generally made by Erickson with the assistance of other Sheyenne employees. The court found that Nokleberg failed to establish that any business practice existed in his dealings with Sheyenne which would justify Nokleberg's claim that the $4,500.00 was due and owing to him; and the record supports such finding and it was not clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D. 1973).

■ The court further found that Nokleberg was not entitled to a credit of $195.50 for plywood returned to Sheyenne from the Anderson farm job site. An examination of the 950 invoices in the record reveals that

Nokleberg did not have any supportive testimony other than his oral assertion that he was entitled to the $195.50 credit. There is Sheyenne's evidence in the record that each time that merchandise was returned, Sheyenne's practice was to execute a credit invoice to the customer involved. The testimony supports the judge's finding, which is not clearly erroneous. Rule 52(a), N.D.R. Civ.P. *Ellendale Farmers Union Co-op Ass'n v. Davis*, 219 N.W.2d 829 (N.D.1974).

■ The trial court also found that Nokleberg's assertion of a $150.00 credit due him for painting a partition on a 4-H building was contradicted by Sheyenne's owner, who testified that there were a number of other 4-H construction projects on which work was being done and that credit for Nokleberg's labor for painting this partition on the 4-H building was included as part of the total 4-H work contracts; and, further, that Nokleberg has never previously claimed such credit during the 5-year period involved. The testimony supports the judge's finding and it is not clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Lizakowski v. Lizakowski*, 307 N.W.2d 567 (N.D.1981).

■ The court also, in its findings of fact, considered Nokleberg's claim for $1,200.00 for rental for storage in Nokleberg's barn of Sheyenne's insulation. There is conflicting testimony by both parties concerning whether or not there was any charge made by Nokleberg for such storage, as well as the period for which the insulation was stored. Sheyenne's witnesses testified that Nokleberg volunteered to store the insulation for Sheyenne. Nokleberg denied having volunteered to store the insulation. However, there is independent testimony that Nokleberg offered the use of his hay loft for storage of Sheyenne's insulation without any request, demand, or agreement for rental being made. Sheyenne allowed Nokleberg the use of its lumberyard facilities without charge for his construction of trestles, rafters, and other projects. Furthermore, the record does not support a landlord-tenant relationship between the parties at any time. The court found that Nokleberg was not entitled to

the $1,200.00 credit for storage and such finding is not clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Klitzke v. Klitzke*, 308 N.W.2d 385, 388 (N.D.1981).

The crux of the dispute between the parties concerns the charges and credits for labor and materials concerning the erection of five different buildings, namely: the Sprunk home, the Allen Braun barn, the Harry Wadeson garage, the 12-plex erected at Lisbon, and the Alvin Wahl machine shed.

■■ The record with reference to the Sprunk home shows that Nokleberg was to be paid the sum of $8,500.00 for services performed for Sheyenne by him and that he actually received credits from Sheyenne, either by checks or credits to his account, of only $6,000.00. The court found that Nokleberg was not a party to the construction contract between Sheyenne and the Sprunks. The record also shows that the Sprunks objected to certain defects in their new home, among which were the failure of certain doors to fit properly and failure to make other needed adjustments, which Sheyenne failed to have corrected; and that Sheyenne was responsible for the fact that the collection of the remaining $2,500.00 labor account from the Sprunks was barred by the statute of limitations. Sheyenne concedes that this is true and that Nokleberg is entitled to a credit of the unpaid $2,500.00 for labor performed on the Sprunk home. In addition, this particular Sprunk contract of Sheyenne's specified a cement block basement rather than a poured cement basement. Sheyenne did not refute or offer any testimony concerning the additional $900.00 expended by Nokleberg for the Sprunks' poured cement basement, and the court in its findings stated that Nokleberg was entitled to a credit of the additional $900.00, as well as the unpaid Sprunk labor account of $2,500.00, or a total of $3,400.00 from Sheyenne. The findings of fact by the court trying a case without a jury are binding upon us unless clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Dobler v. Malloy*, 214 N.W.2d 510, 514 (N.D.1973).

The court's finding of fact was not clearly erroneous that the expenditures by Nokleberg for the Sprunk home of $600.00, which consisted of $297.44 for insulation, plus services for finishing cabinets, and $40 for removal of basement brick tile, were either included in the $8,500.00 labor agreement Nokleberg had with Sheyenne or in the $4,500.00 claimed by Nokleberg, the latter of which claims having been previously considered by the court and having been rejected by it in a prior finding of fact. After a review of the record, we cannot say that this finding of fact is clearly erroneous. *Woodbury v. Pfliiger*, 309 N.W.2d 104 (N.D.1981).

The findings of fact of the district court concerning the 12-plex refer to the doors, windows, and materials which were furnished by Sheyenne. The court found that another firm is alleged to have submitted a bid of $27,000.00 to Nokleberg. Nokleberg asserts that Sheyenne agreed to a bid of $27,000.00, but later Sheyenne billed Nokleberg for $34,944.00, which included additional materials. The testimony adduced at trial by Sheyenne revealed that Sheyenne did not in fact deliver a bid to Nokleberg, but, rather, only an estimate. A "bid" is generally defined as "An offer to perform a contract for work and labor or supplying materials or goods at a specified price", Black's Law Dictionary (Rev.4th Ed. 1968), p. 205; while "estimate" is defined as "A rough or approximate calculation only", Black's Law Dictionary (Rev.4th Ed.1968), p. 647. Nokleberg's testimony did not support his contention that the statement in which Sheyenne billed him for 55 windows rather than 52 windows was incorrect, and his testimony is contradictory when he asserts that the 12-plex contained only 50 of the 52 windows rather than 55. In addition, Nokleberg admitted that he still has one of the 12-plex windows in his inventory and further admitted that he did not know what happened to the other windows. While the testimony is in conflict, the court's findings of fact are supported by the record and are not clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Carlson Homes, Inc. v. Messmer*, 307 N.W.2d 564 (N.D.1981).

The court also found that Nokleberg was entitled to a credit of $1,075.00 for labor on the Wadeson garage project; that a pole barn was constructed for Wadeson and that proper credit was given for it. Sheyenne has not refuted the labor claim of $1,075.00. Accordingly, the testimony supports the finding of fact that Nokleberg is entitled to credit in the amount of the $1,075.00 for Nokleberg's labor on the Wadeson garage project, and the court's findings are not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

The trial court also found that Nokleberg was not entitled to any reimbursement for any forms, ties, and oil, for which he claimed $328.00, because the furnishing of these items is the usual practice of a contractor in doing cement work. The testimony supports the findings of fact of the trial court and they are not clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Sventenko v. Sventenko*, 306 N.W.2d 607 (N.D.1981).

In summary, the trial court found that Sheyenne was entitled to judgment against Nokleberg in the sum of $10,447.99, calculated by the trial court as follows:

| | |
|---|---|
| Amount owing Sheyenne for merchandise based on special master's report of April 1, 1980, and letter of June 9, 1980, amending such report | $22,139.99 |

Less credits for labor for Nokleberg for labor and returned merchandise:

| | |
|---|---|
| Lumberyard item | $ 191.00 |
| Siding on Roesler building | 425.00 |
| Electric door opener return | 156.00 |
| Two sheets of plywood returned | 62.00 |
| Credit entitled "house" additionally included and added to invoice | 337.20 |
| Wadeson garage | 1,075.00 |
| Cleo Braun project | 6,046.00 |
| Sprunk project | 3,400.00 |
| Total credits | $11,692.00 |
| Balance owing Sheyenne by Nokleberg | $10,447.99 |

Nokleberg urges that the district court made a clearly erroneous finding and that amounts from the 32 missing invoices totaling $5,545.83 should not represent a credit for Sheyenne on the basis of the fact that

the total amount of $5,545.83 was derived by the court-appointed special master from an examination of the statements which were prepared from the missing invoices, that is, invoice numbers and amounts listed thereon without identifying the merchandise received or designating the identity of the person by whom the merchandise was received. The Uniform Business Records as Evidence Act, that is, § 31–08–01, of the North Dakota Century Code, provides, in pertinent part:

"*31–08–01. Admissibility in evidence of business records—Term 'business' defined—Exception.*—A record of an act, condition, or event shall be competent evidence insofar as relevant, if:

1. The custodian or other qualified witness testifies to its identity and the mode of its preparation.

2. It was made in the regular course of business, at or near the time of the act, condition, or event.

3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify the admission."

Rule 803(6) and (7), of the North Dakota Rules of Evidence states:

"RULE 803

"HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

.     .     .     .     .

"*(6) Records of Regularly Conducted Business Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

"*(7) Absence of Entry in Records Kept in Accordance With the Provisions of Paragraph (6).* Evidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the non-occurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness."

The trial court found that the amount involved in the missing invoices which were listed on the statements represented the sum of $5,545.83 and were properly chargeable against Nokleberg because they were part of the regular bookkeeping records of Sheyenne and that the notices of the invoices by number, date, and amount were sent to Nokleberg and included in the monthly statements which were forwarded to Nokleberg by Sheyenne. Although Nokleberg attempted by his oral testimony to refute Sheyenne's testimony, there is competent evidence in the record under Rule 52(a), N.D.R.Civ.P., to support the court's findings. The trial court relied upon the special master's reports, as well as Sheyenne's system of bookkeeping, and the court did not err in admitting the monthly statements of Sheyenne without the supportive evidence of the missing invoices. Rule 803(6) and (7), N.D.R.Ev. Accordingly, the trial court's findings are not clearly erroneous. Rule 52(a), N.D.R.Civ.P.; § 31–08–01, N.D.C.C.; see *Pulkrabek, Inc. v. Yamaha Intern. Corp.*, 261 N.W.2d 657, 659–660 (N.D.1977); *Jahner v. Jacob*, 233 N.W.2d 791 (N.D.1975), *cert. den.*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100.

We do not agree, however, with the findings of the trial court that Nokleberg failed to prove he was entitled to a credit of $1,550.00 for labor in constructing the Alvin Wahl machine shed and $1,850.00 for labor on the Allen Braun barn. The findings of the trial court recite that it relied upon the business records of Sheyenne to establish the amounts due Sheyenne. The trial court determined that, although there were missing invoices for merchandise, under the business records statute, § 31–08–01, N.D. C.C., and under Rule 803(6) and (7), N.D.R. Ev., other records were properly admitted to prove the amount due Sheyenne. We agree with that conclusion. However, if the statute is to be applied consistently, the trial court should have credited the amounts on the Alvin Wahl machine shed and the Allen Braun barn as offsets to the amount Nokleberg owed Sheyenne.

Sheyenne's owner conceded in his testimony that there was an agreement between Sheyenne and Nokleberg that Nokleberg was to be paid these amounts for labor on these projects. The records of Sheyenne fail to reflect that Nokleberg was paid or credited with these amounts. Rule 803(7), N.D.R.Ev., provides that evidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, kept in accordance with the records of regularly conducted business activity, is admissible "to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, . . ." It is apparent that credits for labor performed by Nokleberg were matters of which a memorandum, report, record, or data compilation was regularly made by Sheyenne. Therefore, the absence in Sheyenne's records of any indication that these amounts had been credited to Nokleberg is evidence that they were not so credited or paid.

The reasons assigned by the trial court for refusing to allow these sums as offsets to the amount due Sheyenne from Nokleberg are unpersuasive. The trial judge determined:

"It would appear to this court that if the Defendant was not paid for such a large sum of money after doing business with the Plaintiff for at least four years after that event and even constructing another building for the same farmer two years after such event that the Defendant must have been paid and given credit for such labor. He has failed in his burden to establish that he did not receive credit."

Similar reasoning was used by the trial judge with respect to the Allen Braun project.

The evidence as to the rather loose manner in which these parties conducted business, the testimony of Sheyenne's owner that Nokleberg was to be paid these amounts for these projects, and the lack of documentation in Sheyenne's records that Nokleberg was paid or credited leaves us with a definite and firm conviction that a mistake has been made. *Kasper v. Provident Life Insurance Co.*, 285 N.W.2d 548, 551 (N.D.1979); *Bladow v. Bladow*, 249 N.W.2d 917, 920 (N.D.1977). We therefore modify that portion of the judgment which disallowed Nokleberg offsets of $1,550.00 for labor in constructing the Wahl machine shed and $1,850.00 for labor on the Allen Braun barn and remand with directions that Nokleberg be allowed an additional offset for these amounts.

There is a further issue of whether or not the statute of limitations bars the recovery of moneys by Sheyenne and credits on behalf of Nokleberg. Nokleberg in his counterclaim fails to affirmatively plead the statute of limitations as provided for by Rule 8(c), N.D.R.Civ.P. Furthermore, because we conclude that this is a mutual, open, and current account, neither § 28–01–16, N.D.C.C., which is the 6-year statute of limitations, nor § 41–02–104, N.D.C.C., which is the 4-year statute of limitations, is applicable in the instant case because § 28–01–37, N.D.C.C., governs in this case. *See State, Etc. v. Hintz*, 281 N.W.2d 564 (N.D.1979).

Sheyenne has also cross-appealed on two issues, namely: Did the court make clearly erroneous findings of fact in crediting No-

kleberg with $1,075.00 for labor on the Harry Wadeson garage, and in crediting Nokleberg with $337.20? Both of these credits have been discussed earlier in this opinion, and we conclude that the trial court's findings were not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

For reasons stated in the opinion, we modify that portion of the judgment which disallowed offsets to Nokleberg in the amounts of $1,550.00 for labor on the Wahl machine shed and $1,850.00 for labor on the Allen Braun barn, and remand with directions that Nokleberg be allowed additional offsets for these amounts. Costs on appeal are assessed against the appellee.

ERICKSTAD, C. J., and VANDE WALLE and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the results.